# West Branch Logging Company *v.* Strong, Deemer & Company, Limited.

*Boom companies—Tolls—Acts of June 22, 1883, P. L. 156, sec. 2, May 21, 1889, P. L. 259, sec. 2.*

Under the Act of May 21, 1889, amending the act of June 22, 1883, relating to boom and logging companies, a boom company is not confined to its statutory remedy for the collection of tolls, by the stoppage of logs, but as such remedy is inadequate owing to the frequent impossibility of stopping logs, it has the additional remedy of an action of assumpsit.

The words "consent to" in the last line of the proviso of the Act of May 21, 1889, have no other meaning than "shall." A boom company is not bound to furnish the means of floating "unless the owner of the timber and logs shall [consent to] pay the tolls provided for in this act."

In an action by a boom company to recover tolls, where the evidence shows that the timber from which the logs were made was grown on defendant's lands, and a paper filed of record admitted that the logs were floated out of the stream by the defendant, the defendant will not be permitted to allege that the logs were cut by independent contractors who had obligated themselves to pay all the costs of transportation.

Argued March 13, 1900. Appeal, No. 306, Jan. T., 1899, by plaintiff, from judgment of C. P. Lycoming Co., Sept. T., 1894, No. 533, in case tried by the court, in action of West Branch Logging Company v. Strong, Deemer & Co., Limited. Before McCollum, Mitchell, Dean, Fell and Brown, JJ. Reversed.

Assumpsit for tolls. Before Metzger, P. J.

The facts are fully stated in the opinion of the Supreme Court.

Verdict and judgment for defendant for $1,591.66. Plaintiff appealed.

*Errors assigned* were various findings of fact and law.

*H. C. Dornan*, of *Dornan & Ormerod*, for appellant.—The proviso in regard to the corporation not being required to operate or furnish the use of its improvements without the payment of tolls does not confer any practical and substantial right or remedy on improvement companies for the reason that from the mode of doing the business of floating logs, and the character and mode of the operation of the improvements of improvement companies, it cannot be practically applied: Swift River & Black Brook Imp. Co. v. Brown, 77 Me. 40; Bear Camp River Co. v. Woodman, 2 Me. 404.

The act of assembly expressly gives the right to the corporation to collect such reasonable tolls, not exceeding ten cents per thousand feet, as the corporation, or its proper officers may require: Genesee Fork Imp. Co. v. Ives, 144 Pa. 114.

The plaintiff corporation in this case at bar having performed its statutory obligations to float through its improved limits the logs of the defendant, it is entitled to collect the tolls from defendants even though there were a secret intention or contract on the part of the defendant that others should pay such tolls, especially in the absence of any notice from defendants of the condition of matters: St. Louis Dalles Imp. Co. v. C. N. Nelson Co., 43 Minn. 130; Johnson v. Pitts, 45 Mich. 14.

*Seth T. McCormick*, with him *William Russell Deemer* and *Henry C. McCormick*, for appellee.—In support of the doctrine that the owner is not liable and that the liability can only be the liability of an independent contractor, we cite: Allen v. Willard, 57 Pa. 374, Reed v. Allegheny City, 79 Pa. 300, Edmundson v. Pittsburg, etc., R. R. Co., 111 Pa. 316, Welsh v. Parrish, 148 Pa. 599, and Harrison v. Collins, 86 Pa. 153.

The statute has given to the logging company a remedy, to wit, that it shall not be required to operate or furnish the use of the improvements until the log owner, or the log driver, shall

have consented to pay the tolls. This remedy they did not see fit to employ in this case, and we contend that remedy so given by the act under which the corporation was chartered is exclusive of all other remedies. Chestnut Hill Turnpike Co. v. Martin, 12 Pa. 361; Kidder v. Boom Co., 24 Pa. 193; Ahl v. Rhoads, 84 Pa. 327; Borough of Beltzhoover v. Gollings, 101 Pa. 295.

OPINION BY MR. JUSTICE DEAN, May 14, 1900:

The plaintiff is a corporation under the act of Assembly of June 22, 1883, P. L. 156, sec. 2, and the supplement thereto of May 21, 1889, P. L. 259, sec. 2, with power to improve and control the West Branch of Pine creek in Potter county, with the right to charge all persons floating logs on that stream reasonable tolls not exceeding ten cents per thousand feet. After the improvement, in the years 1892, 1893 and 1894, there was floated out of the stream 12,989,914 feet of logs, belonging to defendants and received by them; for the last three years, only, plaintiffs claimed tolls. On this quantity, the tolls charged averaged considerably less than the maximum charge of ten cents per thousand. These logs were cut, put in the stream and floated by parties who contracted with defendants so to do, at so much per thousand, and defendants had no management or control over the floating of logs from the stump to the boom. By writing filed of record, the parties agreed that defendants should have credit for the value of certain improvements put upon the stream by them before plaintiff took possession under its charter. The value of these was $1,591.66. Defendants denied liability for tolls, on the grounds: 1. That in this form of action, they were not answerable. 2. That all the work was done by independent contractors; that while they owned and received the logs, the obligation of paying all charges for transportation, was upon those who had undertaken to cut, float and deliver them. Trial by jury was waived, and the case submitted to the court below, under the act of April 22, 1874.

The learned judge found as a fact that defendants, by their contracts with the loggers and drivers, had relieved themselves from any legal liability for payment of tolls, and therefore entered judgment against plaintiff for the value of the improvements, to wit: $1,591.66, and from that judgment plaintiff appeals.

The questions before us on the appeal, are, can plaintiff sustain a suit in assumpsit for tolls against anybody? and if so, can it, in view of the evidence, sustain one against the owners of the logs?

The 3d section of the act of 1883 provides that: "the improvements of corporations organized for the floating of logs, lumber and timber as aforesaid, and the use of the stream so as to be controlled by them, shall be for the public benefit; so that all persons shall have the right to have their logs, lumber and timber floated in such stream, with the aid of such improvements; subject, nevertheless, to the payment of such reasonable tolls and charges therefor, as said corporation or its proper officers may require, not in any case to exceed ten cents per thousand feet board measure."

Then, in the amendment of May 21, 1889, is this proviso: " Provided further, that the corporation owning such improvements, shall not be required to operate or furnish the use of such improvements for driving or floating timber, unless the owners of such timber and logs consent to pay the tolls provided for in this act."

It is argued here by appellee that, even if defendants are not exempt by reason of the independent contract, nevertheless, by the express terms of the act, the plaintiff had a special remedy for the enforcement of payment, that is, the stoppage of the logs until the tolls were handed over, and that by adopting this remedy, and this alone, could the owners be compelled to pay for the use of the improved highway, and, as they had not consented to pay as expressed in the proviso, the suit could not be sustained.  It is manifest that the word "consent" in the act was not intended to mean that the owner must give his express promise to pay before incurring any liability; the proviso was intended to confer upon the logging company a peremptory and additional remedy for collection; no one can doubt this interpretation on reading the original act and the amendment.  The word " consent" has no other meaning than "shall."  The company was not bound to furnish the means of floating "unless the owner of the timber and logs shall pay the tolls provided for in this act."  We have, then, a special remedy provided by the statute; does it exclude the common-law remedy?  The appellee contends that, under the doctrine laid

down in Huntington, etc., Turnpike Company v. Brown, 2 P. &
W. 462, and cases following it on similar facts, the statutory
remedy is exclusive of all others.

Undoubtedly, under the law as applicable to turnpike roads,
the remedy given by the statute is exclusive, and the reasoning
by GIBSON, C. J., in the case cited, clearly shows why in the
case before him it should be.   The turnpike company had the
right to erect gates across the road in number sufficient to col-
lect the tolls; if the traveler refused to pay, the gate would
not be opened; he would be stopped just there; besides, heavy
penalties were imposed on those who sought to avoid paying by
avoiding the gates.   The suit, in that case, was for the use of
the turnpike without any fraudulent purpose on part of the
defendant between gates.   It was held that the statutory rem-
edy of the company for the collection of its tolls was ample.
It was further held, that the company, as a matter of public
policy, could not sue on a quantum meruit for the use of its
road, without a fraudulent purpose, between gates.   But this
stream, for twenty miles, was improved by plaintiff for but
one kind of transportation, the floating of logs; at any point,
for that distance, the owner could dump his logs into the stream
at such stages of the water as suited him; the plaintiff could
not erect barriers to prevent it, for it had no riparian rights of
a landowner; when once in the stream, it could not stop the
logs and demand payment of the tolls; it had no authority to
seize them in the boom when they arrived at destination.   Take
the single year 1894: at the time of the spring freshets, March
and April, this one partnership put in the stream at different
points more than 37,000 logs; it was utterly impracticable to
seize and hold these logs in midstream for payment of tolls.
We have followed Turnpike Company v. Brown, supra, in
Chestnut Hill Turnpike Co. v. Martin, 12 Pa. 361, Kidder v.
Boom Co., 24 Pa. 193, and Ahl v. Rhoads, 84 Pa. 327, and in
other cases, where the statute gave anything approximating an
adequate remedy for collection.   But in no one of them are
the facts like unto those in the case before us.   We decline to
hold, under the peculiar facts of this case, that the statutory
remedy is exclusive, because it is wholly inadequate, and are
of opinion that this suit can be maintained notwithstanding
the remedy given by the proviso to the act of 1889.

The next question is, assuming that the payment of tolls can be enforced by suit, are defendants, because of their independent contracts, liable at all? The learned judge of the court below, thought they were not. We think, on the undisputed facts, his conclusion a mistaken one. The timber from which the logs were cut, grew upon defendants' land; they were delivered to them in the boom at Williamsport; they were known to all as defendants' logs. So far as the evidence shows, plaintiff had no knowledge of the contract with the loggers and drivers; certainly they cannot disclaim liability as owners, for the tolls, by setting up a secret agreement of which they gave plaintiff no notice, when called upon for payment. But why discuss this question? The agreement of December 27, 1895, puts the answerability of defendant beyond doubt. It is as follows:

"West Branch Logging Company v. Strong, Deemer & Company, Limited. No. 533, Sept. Term, 1894, Court of Common Pleas, Lycoming County.

"For the purpose of dispensing with proof, it is hereby agreed that the number of logs and measurement thereof, floated out of the West Branch of Pine creek by the defendant, together with the date of such floating, is as follows:

| 1890, | 4,249 logs |  |  |  |  |  | 772,018 | feet |
|---|---|---|---|---|---|---|---|---|
| 1891, | 2,904 " |  |  |  |  |  | 494,109 | " |
| 1892, | 11,046 " |  |  |  |  |  | 2,009,311 | " |
| 1893, | 17,514 " |  |  |  |  |  | 3,560,907 | " |
|  | 1,483 " |  |  |  |  |  | 332,873 | " |
| 1894, | 37,369 " |  |  |  |  |  | 7,086,823 | " |
|  |  |  |  |  |  |  | 14,256,041 | feet |

"December 27, 1895.

"WEST BRANCH LOGGING CO.,
"per A. CLINTON, Sec.
"STRONG, DEEMER & CO., Limited,.
"ELIAS DEEMER, Treas."

The suit was for tolls on the very logs floated as specified in the agreement; it expressly states they were floated by the defendants. It is argued by appellee that this agreement was only intended to dispense with proof of date of floating and

quantity of logs; it is not so restricted in its terms; it admits a liability expressly charged in plaintiffs' declaration; nor is there any specific averment in the affidavit of defense, of exemption by reason of an independent contract. This agreement is susceptible of no reasonable interpretation, other than that defendant floated their own logs and thus incurred personally the liability for tolls.

The judgment is reversed, and the record is remitted to the court below for computation according to this opinion; that is, plaintiff is entitled to recover for all logs floated in 1892, 1893 and 1894 according to the tolls charged, as shown by its declaration, with interest thereon from June 1, of each year down to the date of the judgment rendered by the court. We do not disturb the finding for the defendant of the value of the improvements in the sum of $1,591.66 as of that date; whatever difference there may be between the aggregate amount of tolls when computed as directed and the value of the improvements made by defendants as found by the court below, must be entered as a judgment for the party in whose favor such difference may be.