## Ahl *versus* Rhoads. *et al.*

1. Where a bank, without the consent of its stockholders, executes a mortgage upon its property to secure the debt of a creditor, which debt consists of deposits in the bank, the execution of this mortgage is not an increase of indebtedness within the meaning of sect. 7, art. 16, of the constitution, which prohibits any increase of indebtedness by a corporation without the consent of a majority of its stockholders.

2. Even if the execution of this mortgage was the creation of an increased indebtedness to which the constitutional prohibition would apply, where the bank has been incorporated prior to the adoption of the constitution, and has not since accepted the benefits of any legislation thereunder, it is not subject to the provision.

3. The Defalcation Act of 1705 does not authorize the admission of proof of damages arising from a technical tort.

4. The bank made an assignment in pursuance of the provisions of the Act of 16th of April 1850, and in subsequent proceedings under that act it was declared fraudulently insolvent. Under the Act of 12th of April 1867, a bill in equity was filed by the assignees against A., wherein he was charged, with others, with misfeasance and neglect as a director, whereby the fraudulent insolvency of the bank had been produced. The bill alleged that certain acts wherein A. had participated had resulted in a loss to the bank of a specific sum, and prayed for a decree against him for that amount. Pending these proceedings on the bill, A. commenced an amicable action of scire facias against the assignees on a mortgage given to him by the bank to secure deposits made by A., and the assignees proposed to give evidence of the misfeasance and neglect charged in the bill as a set off to his claim. *Held*, that it was not a proper set off.

5. *Held further*, that the Acts of 1850 and 1867 having provided a mode by which the liability of bank officers· and directors for neglect and malfeasance is to be investigated and established, no other remedy than that prescribed by these statutes can be enforced.

6. Hayes *v.* Commonwealth, 1 Norris 518, followed, and Kisterbock's Appeal, 1 P. F. Smith 483, explained and distinguished.

May 17th 1877. Before Agnew, C. J., Sharswood, Mercur, Paxson, Gordon, Woodward and Sterrett, JJ.

Error to the Court of Common Pleas of *Cumberland county :* Of May Term 1877, No. 167.

Scire facias sur mortgage issued by John A. Ahl, for use of Daniel V. Ahl, against John P. Rhoads and Samuel S. Shryock, assignees of the Farmers' and Mechanics' Bank of Shippensburg.

The following, in substance, was the case stated for the opinion of the lower court :—

" The Farmers' and Mechanics' Bank of Shippensburg was incorporated on the 11th day of April 1862, by a special act of the legislature (see Pamph. L. 1863, p. 661), and shortly after, began and continued to transact the business of banking until the 2d day of April 1875, when it discontinued its banking operations. From the 2d day of November 1863, until the 1st day of November 1874, excepting an interval of a year, John A. Ahl, the legal plaintiff in this amicable action, was a director of said bank.

" The said Ahl was a constant customer of and depositor with said bank during the entire period of its operations, and by sundry bal-

| 84 | 319 |
| 128 | 118 |
| 84 | 319 |
| 139 | 31 |
| 84 | 319 |
| 146 | 632 |
| 84 | 319 |
| d196 | 55 |
| 84 | 319 |
| 202 | 4591 |
| 202 | 3594 |
| 84 | 319 |
| 205 | 4167 |
| 84 | 319 |
| 211 | 4392 |

[Ahl *v.* Rhoads.]

ances in his favor, which had accumulated from time to time, had become, on August 25th 1874, creditor of the said bank by deposits, payable on demand, in a large sum of money, to wit, $9083.37, on which day the directors of said bank, as an inducement to the said Ahl not to reduce the balance standing in his favor in any considerable degree, and to increase it as, from time to time, he should have occasion to make deposits, resolved that the president be authorized to transfer to Ahl the mortgage held by the bank against T. P. Blair, as collateral security for any money he may or has advanced to the bank, said Blair having executed the aforesaid mortgage to the said bank for the purpose of securing a debt due by him to it, amounting to $56,071.

" On the 6th of October 1874 the resolution aforesaid was rescinded by the board of directors. On the day last mentioned the balance of call deposits in favor of the said Ahl having increased to $15,659.25, stipulations were entered into between him and the said bank, by which it was agreed, as an inducement to the said Ahl to keep a large balance in his favor in his deposit account, to transfer to the said Ahl the aforesaid mortgage of Blair as a collateral security for the payment of the same with interest, the said deposits being subject to be drawn from by check or otherwise at any time, according to the usage prevailing in banks in reference to call deposits. On the same day this assignment was in due form effected, in pursuance of the resolution of the board of directors. On the 12th of August 1874 previously, an action of debt had been brought by the bank against T. P. Blair, on several of the bonds which the mortgage of Blair had been given to secure to the bank, and a judgment had been recovered on the same on September 14th 1874, and on the same day a fi. fa. issued upon the same, and the personal estate as well as the mortgaged lands levied upon; and on the 27th of October 1874 this judgment was assigned to said John A. Ahl, for the same purpose for which mortgage given to secure said bonds had been previously assigned.

" On the 12th day of December a venditioni exponas issued, and on the 8th day of January 1875 the real estate mortgaged by said Thomas P. Blair was sold at sheriff's sale, and the bank became the purchaser thereof, the said John A. Ahl having consented to relinquish his interest under the assignments aforesaid, on condition that the said bank would, within a reasonable time after the vesting of the title in it, execute to him a mortgage upon the same lands, for the purpose of securing the deposit balance that should at the time of the making thereof be found standing in his favor.

" Various fluctuations occurred after October 6th 1874 in the deposit account of the said John A. Ahl, until, on the 29th day of January 1875, the balance in his favor amounted to $17,631.59, on which day, in compliance with the condition on which the said John A. Ahl relinquished his rights under the aforesaid assign-

[Ahl v. Rhoads.]

ments to the bank, the bank then executed a mortgage upon the aforesaid lands formerly of T. P. Blair, to secure to him said sum of $17,631.59, with lawful interest one year after date. This mortgage being the one on which this amicable sci. fa. is founded, was in all respects duly executed, save that no previous action of the stockholders, as such, of said bank, was had in reference thereto. At the time of the execution thereof the said John A. Ahl stipulated that the aforesaid deposit balance should no longer be subject to his check or call as it had been theretofore, but should be payable one year thereafter as aforesaid. No portion of the said sum of $17,631.59, or of the interest which has accrued thereon, has been paid.

"On the 25th day of December 1875 the said John A. Ahl, for full value and bona fide, assigned and transferred the said mortgage to Daniel V. Ahl, the use plaintiff in this amicable action.

"On the 3d day of May 1875, in pursuance of the provisions of the Act 16th April 1850 'regulating banks,' under a decree of the Court of Common Pleas of Cumberland county, the said Farmers' and Mechanics' Bank of Shippensburg made an assignment of all its estate and effects to John P. Rhoads and Samuel S. Shryock, in trust for the benefit of creditors, who having been approved by the said court, said assignees, being duly qualified according to law, entered upon the discharge of and are now prosecuting the duties of their said trust.

"On the 1st day of June 1875, the said Court of Common Pleas, in obedience to the fourth section of the act regulating banks, approved 16th April 1850, appointed auditors, who on the 14th day of December 1875, made their report to the said court finding the said bank to be fraudulently insolvent; thereupon in conformity with an Act approved 12th April 1867, the said assignees in August 1876, filed a bill in equity, which is still pending and is progressing duly towards decree, in which they complain *inter alios*, against the said John A. Ahl for various misfeasances and neglects of him as a director alleged to have been committed jointly by him with his co-directors, and to have occasioned the fraudulent insolvency of the said bank.

"If the court should be of the opinion that said board of directors of said bank had the power to execute said mortgage, without previous consent of the holders of a majority of the capital stock, and that upon a trial before a jury on a sci. fa. on said mortgage the misfeasances and neglects of duty set forth in said bill in equity on the part of the said John A. Ahl, as aforesaid, would not be admissible in evidence on part of the defendants as a set-off against the debt claimed on said mortgage by Daniel V. Ahl, the equitable plaintiff, then judgment to be entered for the plaintiff for $17,631.59 with interest from January 29th 1875.

Should the court be of a contrary opinion then judgment to be entered for the defendants.

3 NORRIS—21

[Ahl *v.* Rhoads.]

The court, Herman, P. J., held that the mortgage given by the bank to John A. Ahl was without authority of law, that whatever may have been the powers of a corporation, prior to the adoption of the constitution of 1874, to increase its indebtedness, the exercise of such powers, without the consent of the majority of the stockholders first obtained, is now, by that instrument as well as by the Act of April 28th 1874, Pamph. L. 73–106, absolutely prohibited, and was of opinion, therefore, that judgment must be given for defendants on the case stated. Having decided the question as to the validity of the mortgage, the court said it was unnecessary to discuss the 'second question raised, but observed that on the authority of Kisterbock's Appeal, 1 P. F. Smith 483, that if the mortgage were such as that the action could be sustained upon it, the misfeasances and neglects of duty on the part of the legal plaintiff, as set forth in the bill in equity, would be admissible in evidence as a set-off to the debt claimed in said mortgage. The court then entered judgment for defendants, which was the error assigned by plaintiff, who took this writ.

*W. Trickett*, for plaintiff in error.—The mortgage was authorized by law : Ardesco Oil Co. *v.* N. A. Mining and Oil Co., 16 P. F. Smith 382 ; Dana *v.* Bank of United States, 5 W. & S. 243, and without concurrence of stockholders : Bank of Pittsburgh *v.* Whitehead *et al.*, 10 Watts 402 ; Dana *v.* Bank, *supra* ; Ardesco Oil Co. *v.* N. A. Mining and Oil Co., *supra*. Bank had power to assign whole estate for creditors : Dana *v.* Bank, *supra*. The charter of the bank empowers it to mortgage its real estate, and this power is lodged with the directors : Leggett *v.* N. J. Manufacturing and Banking Co., Saxton's Chan. 552.

The provisions of the new constitution were not intended to affect corporations in existence when the constitution went into operation unless they accepted the benefits of new legislation : Hays *v.* Commonwealth *ex rel.* McCutcheon, 1 Norris 518. The bank did not increase its indebtedness in giving the new mortgage to Ahl, it simply changed its form, and it is not within the letter or spirit of the constitutional inhibition. The new security was only the recognition and continuity of that which preceded it : Burnhisel *v.* Firman, 22 Wallace 178.

A claim recoverable only by action of account render or bill in equity cannot be set off at law : Russell *v.* Miller, 4 P. F. Smith 164 ; Klase *v.* Bright, 21 Id. 192 ; Hains *v.* Rapp, 2 Weekly Notes 595. The liability of bank directors and the methods for its enforcement are defined by the Acts of 16th April 1850, Pamph. L. 492, and of the 12th of April 1867, Pamph. L. 71, and the procedure prescribed is not at law, but in equity, and under the provisions of the Act of 1806, the remedy therein provided must be pursued. A jury then, either in an action brought to enforce the liability of directors, or in a set-off to a claim sued

[Ahl v. Rhoads.]

before it, has no jurisdiction over alleged torts or misfeasances of directors of banks. Kisterbock's Appeal, 1 P. F. Smith 483, is plainly distinguishable from this case.

*L. Todd, W. H. Miller,* and *W. F. Sadler,* for defendants in error.—The borrowing of money by the mortgaging of the real estate of a bank, is not a part of the business of a bank. It could not be otherwise than hurtful to credit of the corporation and most detrimental to the interests of the stockholders. Besides it being unusual for banks to make loans in this manner, the permanent character of the loan, one secured by a mortgage, is also an additional reason why the acquiescence of stockholders in its creation should be had, and makes it the more probable that it is the sort of indebtedness forbidden by the constitution. No reasonable interpretation can be given to the seventh section of article 16 of the constitution, except that it was intended to inhibit the creation of forms and amounts of indebtedness not necessary, and incidental to, and inseparable from, the carrying on the business of the corporation, without the assent of those holding a majority of its stock.

The debt due by Ahl, for neglect and misfeasance as a director, was fixed or was capable of ascertainment. It did not depend upon the caprice of juries, but the records of the bank. Its books and papers gave the basis from which the liability of Ahl to the bank could be precisely ascertained. It was a mere matter of computation from data about which there could be no dispute. The demand from Ahl could have been collected in action of debt, at least in so far as to many of the acts of omission and misfeasance charged against him in the bill in equity. There was no need of proceeding in trespass or trespass on the case to enforce Ahl's liability. Steigleman v. Jeffries, 1 S. & R. 479; Nickle v. Baldwin, 4 W. & S. 290, and Franklin Ins. Co. v. Ellmaker, 6 Id. 439, are authorities which sustain this view of the right to set-off under our defalcation act.

Mr. Justice WOODWARD delivered the opinion of the court, October 1st 1877.

On the 6th of October 1874, when the mortgage which the Farmers' and Mechanics' Bank of Shippensburg held against T. P. Blair was assigned to John A. Ahl, the legal plaintiff here, an indebtedness to him had accrued and was existing amounting to $15,659.25. For this indebtedness the mortgage was designed to be a collateral security. It consisted of deposits subject to check, made from time to time in the usual course of business. The arrangement was made, according to the terms of the case stated, "as an inducement to Ahl to keep a large balance in his favor in his deposit account." The balance due was payable on demand, and was subject to no lien and no right of retention in favor of the bank. The mortgage of Blair was a security which the corporation

at the time could legally hold and was competent to transfer. It was found expedient afterwards to sell the land bound by it, under a judgment for the mortgage-debt that had been recovered, and on the 8th of January 1875 the bank became the purchaser. Ahl's interest under the assignment was relinquished, upon the agreement of the bank to execute, within a reasonable time after the acquisition of the title, a new mortgage of the same land to him. This was done on the 29th of January 1873, when the deposit balance had grown to the sum of $17,631.59. It was then agreed that the account should be subject no longer to immediate call, but should be payable one year thereafter. Except as to amounts, the relative positions the parties occupied when the Blair mortgage was assigned remained unaltered when the new mortgage was executed. Ahl was the creditor of the bank, with the right to require instant payment. Unless it could be held that the entire business of the corporation was stricken down, and that the power of its officers to receive deposits at all was utterly withdrawn by the seventh section of the sixteenth article of the constitution and the Act of the 18th of April 1874, passed to carry its provisions into effect, there was nothing in these transactions that could properly be described as the creation or increase of a debt. Their object was to provide a collateral security for an indebtedness that had already legitimately accrued. Under his assignment, the sheriff's sale could have been prevented by or made subject to the control of Ahl. When he received the new mortgage he acquired a security exactly equivalent to that which he had surrendered. The same land was bound, the same remedies were reserved, and the same indebtedness remained. The power belongs to a corporation as to an individual, unless restrained by its charter or by other statutes, to assign its property or effects to pay preferred creditors, without the authority or consent of its stockholders : Dana *v.* The Bank of the United States, 5 W. & S. 233. The power of this bank to secure its debt to the plaintiff in the mode adopted here, has not been destroyed or impaired by the constitutional provision and the legislation under it, which the defendants have invoked.

Even if the adjustment which these parties made had been of a character to which the inhibition of the constitution of 1873 would, in its terms, apply, still, upon this branch of this controversy, the rule settled in Hays *v.* The Commonwealth, 1 Norris 518, would be decisive. It was there distinctly held that "charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation." The corporate powers and privileges of this bank were created and defined by the act of incorporation passed on the 11th of April 1862, and the general legislation then in force. From the review of the authorities made in The Commonwealth *v.* The Pittsburgh and

[Ahl v. Rhoads.]

Connellsville Railroad Company, 8 P. F. Smith 26, it appears to be settled that a charter confers contract rights which can be withdrawn or modified only when found to be "injurious to the citizens of the Commonwealth," and when, in a proper proceeding in which the corporation exercising those rights is a party, the fact of the injury is judicially ascertained.

John A. Ahl was a director of the bank from the 2d of November 1863, until the 1st of November 1874, except for the period intervening between the 3d of November 1868 and the 1st of November 1869. On the 3d of May 1875, the bank made an assignment to the present defendants in pursuance of the provisions of the Act of the 16th of April 1850. Auditors appointed under the fourth section of that act, reported on the 14th of December 1875, that the bank was fraudulently insolvent, a finding which was confirmed by a decree of the Court of Common Pleas on the 30th of March 1876. In August 1876, under the authority of the Act of the 12th of April 1867, a bill in equity was filed by the assignees against Ahl and a number of other persons, in which jointly with them he was charged with misfeasance and neglect as a director in a variety of particulars by which the fraudulent insolvency of the corporation had been produced. The bill alleged that acts in which he participated had resulted in losses amounting to $68,011.75, and contained a prayer for a decree against him for that sum. Proceedings on this bill are still pending in the Common Pleas of Cumberland. The case stated stipulated for a judgment in favor of the plaintiff, if it should be held that the board of directors had the power to execute the mortgage of the 29th of January 1873, without the previous consent of the holders of a majority of the capital stock, and that on the trial of a scire facias on that mortgage the defendants would not be entitled to give evidence of the misfeasance and neglect charged in the bill in equity against the plaintiff, as a set-off to his claim. If the decision on either point should be adverse to the plaintiff, it was stipulated that judgment should be entered for the defendants.

By the Defalcation Act of 1705, a defendant in any action on a contract was authorized to plead payment, and give any bond, bill, receipt, account or bargain in evidence. The construction of this statute by the courts has been broad and liberal. It has been so extended that the right of a defendant may be regarded as established to set off against a plaintiff's demand any damages capable of liquidation, and for which an independent action *ex contractu* could be maintained. This may be stated as the general result of the authorities, extending especially from Nickle v. Baldwin, 4 W. & S. 290, to Hunt v. Gilmore, 9 P. F. Smith 450. But, broad and liberal as the construction has been, it has never authorized the admission of proof of damages arising from a technical tort. In Beyer v. Fenstermacher, 2 Whart. 95, it was held that a plaintiff in replevin, founded upon a distress for rent, could not set off a

debt due to him by the landlord, or a demand against the landlord, not connected with the rent or the occupation of the premises; and the reason given by Judge KENNEDY was that "an action of replevin, instead of being founded on a deed, bargain or assumption, is grounded on a tortious taking by the landlord." A debt, or the damages which can be set off as an independent counterclaim, must be such as a jury can find and liquidate in the ordinary way, just as if the defendant were a plaintiff suing in debt, assumpsit or covenant: Russell *v.* Miller, 4 P. F. Smith 154. The plaintiff owed no contract duty to the bank or to the assignees. His liability has been alleged throughout to rest on misfeasance and neglect of duty. The Act of 1867 prescribed the remedy by bill in equity against officers and directors by whose acts of omission or commission the fraudulent insolvency of a bank should be caused, and it required "the fraudulent acts complained of" to be "particularly specified." It was for technical torts—for wrongful acts done while exercising fiduciary functions as bank officers and directors—that the statutory remedy was provided.

An interjection into the trial of a scire facias on a mortgage, or an inquiry into the whole history of the management of this corporation during the period of eleven years that elapsed from the plaintiff's first election until he ceased to be a director, would involve elements of confusion, inconvenience and incongruity that would be countless. By what limits would the inquiry be bound? Would the liability of the plaintiff alone be investigated? Would the investigation stop when a charge should be fastened upon him equal in amount to the mortgage-debt? If so, would the residue of the charge against him be recoverable in the suit in equity? Or would the entire claim of the assignees, so far as it would extend to him, be adjusted by the verdict and judgment in the scire facias? What then would be the effect of the adjustment on the other defendants in the bill? And on what principle and by what process would ulterior rights of contribution be worked out? For every reason of convenience, accuracy and safety, the claim against the plaintiff must be relegated to the forum whose forms and jurisdiction are adapted to its investigation. It was said in Russell *v.* Miller, *supra*, that "where the right of the defendant is only to call the plaintiff to an account, and his demand is such as must be settled by an action of account-render, or by a bill in equity for an account, it is not a proper set-off. A jury cannot pass on a question of this nature without great inconvenience. A set-off to a set-off would not be permitted, and it would be much worse to try before a jury at bar an unadjusted question of account and of profits arising out of a long and complicated business to be found only in numerous books of account." Objections to the admission of evidence based on inconvenience and of want of adaptability in the tribunal, could never be rested on better grounds than those which exist in the circumstances of this case.

[Ahl v. Rhoads.]

But for a still more conclusive reason, the equitable jurisdiction must be held to be exclusive. The Act of 21st of March 1806 has declared that, " in all cases where a remedy is provided, or a duty enjoined, or anything directed to be done by an Act or Acts of Assembly, the directions of the acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law in such cases, further than shall be necessary for carrying such act or acts into effect." In almost an infinite variety of cases this court has enforced this statutory rule. Apart, indeed, from the Act of 1806, it seems to be a principle of pervading and almost universal application, that where a statute confers a new power or right, and provides a particular mode by which it may be vindicated, no other remedy than that afforded by the statute can be enforced: Chestnut Hill Turnpike Co. v. Martin, 2 Jones 361; 7 Viner 349, tit. *Debt*, M.; Smith v. Drew, 5 Mass. 514. The entire machinery by which the liability of bank officers and directors for neglect and misfeasance is to be·investigated and established, has been provided by the Acts of 1850 and 1867. And before this question arose that machinery had been put in motion. All precedent would be disregarded in invading the jurisdiction which the Court of Common Pleas under the pending bill in equity has legitimately acquired.

To sustain their decision, the court below relied on the authority of Kisterbock's Appeal, 1 P. F. Smith 483. The circumstances of that case differed in some essential respects from those developed in this record. In the first place, the proceeding there was the distribution of the entire estate of The Premium Loan Association, which had been assigned for the benefit of creditors. All parties in interest were represented before the auditor. He had power to investigate and adjust all existing equities, and no subsequent litigation could arise, and no ulterior rights could be left open or outstanding. His report, when confirmed, was a settlement of all conflicting claims. If this set-off were permitted here, inquiry into the same subject-matter would be still inevitable in the disposition of the bill in equity, and the effect would be to hamper and embarrass that whole proceeding. Again, no statute had defined the acts which would create a liability on the part of a director in a loan association, and none had specified the mode by which redress was to be obtained. And again, it was under no statutory rule measured by which particular things done and particular things omitted were to become misfeasance or neglect, just as it was on no doctrine of constructive fraud, that Kisterbock was held responsible. The auditor found the fact of his knowledge of the fraudulent insolvency of the institution at the time when the money he claimed in the distribution was advanced to pay the dividend that had been fraudulently declared. It was because he had been a participant in an actual fraud of which he had actual knowledge that his claim on the fund was postponed. In delivering the opinion

[Ahl *v.* Rhoads.]

of the court, the present chief justice said : " The question is not whether he might enforce his demand against the corporation, if it were solvent, but he here seeks to have satisfaction out of a fund which belongs to the stockholders, whose interests he has betrayed. The corporation is insolvent, and some one must lose. Shall it be the innocent stockholders, or the guilty participant in the fraud which caused the insolvency ?' It is not a mere set-off, or counter claim, by reason of simple liability of the corporation, but it is a claim to come in on the remnant of the corporate effects, constituting a fund to be distributed justly upon the evidence. He assisted by fraud to reduce the association to insolvency, and thereby to bring the wreck of its fortunes into distribution, and now he seeks to put in his hand and withdraw from this fund the very money he gave to carry out the fraud. Every principle of justice requires him to be postponed until the stockholders whom he defrauded are satisfied." It is manifest, from the facts stated and from the language of the chief justice, that the question now under consideration cannot be determined or even elucidated by any principle that was announced in Kisterbock's Appeal.

> The judgment is reversed, and it is ordered and adjudged that judgment be entered in favor of the plaintiff, in accordance with the stipulations of the case stated.