# Cameron, Appellant, *v.* Christy.

*Banks and banking—Trust companies—Power to pledge assets to secure deposits—Deposits of public officers—Preferences—Public policy—Acts of May 27, 1895, P. L. 127, and May 9, 1923, P. L. 173—Corporations—Estoppel—Ultra vires.*

1. Trust companies, incorporated under the Act of April 29, 1874, P. L. 73, and its supplements, have the power, under the Act of May 27, 1895, P. L. 127, to pledge assets to secure deposits.

2. The power "to receive deposits of moneys and other personal property and issue their obligations therefor," as provided by the Act of 1895, fairly implies a power to pledge securities to safeguard the return of deposits when called upon by the depositor.

3. The pledging of assets by state banks and trustees to secure deposits by public officers, is a general practice throughout the State, is not against public policy, and does not impose any hardship on other depositors.

4. The pledging of assets to secure deposits made by a solvent bank is not an unlawful preference.

5. In the absence of express limitations, a corporation, when solvent, has the same right as an individual to prefer one creditor over another or to secure one while leaving others unsecured.

6. Where a bank or trust company secures the benefits of a deposit, it is estopped from claiming that a pledge of securities, to protect such deposit, was an ultra vires act, nor can the banking department, acting as a receiver of such bank or trust company, set up such a claim.

7. Where a deposit of public moneys by a public officer has been secured by a pledge of securities, such pledge applies to moneys left with the bank when the officer retires and turns over in fact such moneys to his successor.

Argued April 14, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 59, March T., 1926, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1925, No. 495, dismissing bill in equity, in case of Peter G. Cameron, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the business and property of the Carnegie Trust Co., by Frank W. Jackson, Special

Deputy, as Agent, v. Walter J. Christy, Collector of Allegheny County Delinquent Taxes. Affirmed.

Bill to require defendant to turn over securities to plaintiff. Before SHAFER, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Leonard K. Guiler,* with him *E. Lowry Humes,* for appellant.—It was alleged in the bill, and shown by its charter, that the Carnegie Trust Co. is a title insurance company, incorporated February 18, 1901, under the provisions of the Act of April 29, 1874, and its supplements. That such a corporation is not a banking institution and cannot engage in the business of banking was squarely decided by this court in DeHaven v. Pratt, 223 Pa. 633.

A title insurance corporation has not the implied power to pledge its assets as security for a deposit: Patterson v. Bank, 130 Pa. 419; Bailey v. Fuel Co., 193 Pa. 175; Engle v. O'Malley, 219 U. S. 128.

The pledge was a fraud on other depositors: Snayberger v. Fahl, 195 Pa. 336; Werner v. Zierfuss, 162 Pa. 360.

Carnegie Trust Company had no power to pledge its assets to defendant as security for his deposit: Ahl v. Rhoads, 84 Pa. 319.

The pledge should be declared void as against public policy: Armstrong v. King, 281 Pa. 207; Kuhn v. Buhl, 251 Pa. 348; Patterson v. Bank, 130 Pa. 419; Com. v. Junkin, 170 Pa. 194.

The funds which defendant had on deposit when plaintiff took possession of the Carnegie Trust Company were not covered by the terms of the bond: Horan v. Weiler, 41 Pa. 470.

*George E. Alter,* with him *George Weil,* for appellee.
—The company had the power to pledge its assets to
secure deposits: Ahl v. Rhoads, 84 Pa. 319.

It is not contrary to public policy.

The validity of the pledges is sustained by ample au-
thority: Commercial National Bank v. Henninger, 105
Pa. 496.

The deposit is covered by the bond.


OPINION BY MR. JUSTICE FRAZER, May 26, 1926:

This bill, filed by the secretary of banking of the Com-
monwealth of Pennsylvania, as receiver of the assets of
the insolvent Carnegie Trust Company, against the col-
lector of delinquent taxes of Allegheny County, asks
that defendant be ordered to turn over to plaintiff bonds
of the Carnegie Coal Company, having a par value of
$560,000, assigned to defendant as collateral to secure
funds collected and deposited by him with the trust
company from time to time in his official capacity.  The
court below dismissed the bill and plaintiff appealed.

The Carnegie Trust Company, having its place of
business in the Borough of Carnegie, had been a
depository of county funds before defendant's appoint-
ment to the office of delinquent tax collector, his prede-
cessor having at that time on deposit $337,685.84 which
was permitted to remain and merely be transferred from
one name to another.  Defendant demanded security for
the deposit, threatening to withdraw the account if this
were not furnished. · The trust company promised to
comply with the request and adopted a resolution au-
thorizing the proper officer to execute to defendant a
bond in the sum of $560,000 and pledge therewith the
bonds, the subject-matter of this proceeding as col-
lateral security, "for all moneys deposited on the books
of the company in the name of" defendant.  Pursuant to
this resolution a bond was prepared in which John A.
Bell, president of the trust company, was named as
surety and recited the bonds deposited as collateral

were the property of the surety to whom they were to be returned when released from the obligation. This provision was inserted pursuant to oral information given defendant's attorney by Bell who stated the bonds were his property. As a matter of fact, it was shown at the trial that the bonds did not belong to Bell, but were the property of the trust company.

At the time plaintiff took possession of the assets of the company, April 27, 1925, defendant had on deposit with the company, a balance of $332,579.26. There were in all about 10,000 other depositors, and it is conceded the assets are not sufficient to pay them in full. Plaintiff claims the assignment of the bonds to defendant as collateral was void and that they should be turned over to him to distribute the proceeds derived therefrom among all depositors pro rata, the principal argument in support of this claim being that the Carnegie Trust Company, organized under statutes relating to title insurance companies, had no authority to engage in the business of banking and was without power to pledge its assets to secure one of its depositors.

The company was incorporated in 1901 under section 29 of the Act of April 29, 1874, P. L. 73, for the purpose of insuring titles to real estate. In 1881 (May 24, P. L. 22) an act was passed enlarging the powers of such companies giving them the right to receive and hold on deposit and in trust, and as security, real and personal property, including the notes, bonds, obligations of states, individuals, companies and corporations, with the power to purchase, collect, adjust and settle, sell and dispose of the same. This act expressly provided that nothing therein contained should authorize such companies to engage in the business of banking. The Act of May 9, 1889, P. L. 159, added additional powers, giving such companies the right to act as assignees, receivers, guardians, executors and administrators. This act also denied companies of this character the right to engage in the business of banking. The Act of

May 27, 1895, P. L. 127, amended the fourth section of the Act of 1889 by giving the additional power "to receive deposits of moneys and other personal property, and issue their obligations therefor, to invest their funds in and to purchase real and personal securities, and to loan money on real and personal securities." The provision forbidding such companies to engage in the business of banking was omitted.

In DeHaven v. Pratt, 223 Pa. 633, this court held that trust companies incorporated under the above-recited acts were not banking institutions within the meaning of the Act of May 11, 1874, P. L. 135, imposing double liability on stockholders of such institutions. The Act of May 9, 1923, P. L. 173, passed pursuant to section 11, of article XVI, of the Constitution, gave every trust company and bank the right to discount paper. We deem unnecessary a discussion of the effect, if any, the Act of 1923 had on the rights and powers of the Carnegie Trust Company, organized as a title insurance company, or whether that company in fact attempted to exercise rights thereunder by carrying on a banking business because, in our opinion, the power given by the Act of 1895 "to receive deposits of money and other personal property and issue their obligations therefor" is ample authority to sustain the transaction here involved. The power to issue an "obligation" for a deposit fairly implies a power to pledge securities therefor when necessary to safeguard the return of the deposit when called upon by the depositor. The conditions on which the deposit was made worked no hardship on other depositors. Presumably their deposits were made more secure by the additional business secured by the company through the large deposits made by defendant. The fact that assets were pledged to secure the deposit did not alter the situation. The obligations of the company were not thereby increased in the slightest degree. It was agreed by counsel at the trial that the pledging of assets by state banks and

trust companies to secure deposits by public officers is a general practice throughout the State. In view of this common practice, which is one to be encouraged rather than discouraged, we fail to see how other depositors, whose rights were represented by plaintiff in the proceeding, have any standing to complain. This general practice also answers the argument that pledging of the bonds to secure one depositor in preference to others is against public policy. It surely cannot be contrary to public policy to follow a practically universal custom established by long usage and good business and which has likewise the sanction of the federal government in the deposit of its funds in national banks. In fact, we find it difficult to see in what respect an arrangement intended to safeguard public money on deposit in banks could be deemed contrary to public policy. The greater the precautions taken the better the public is secured.

The right of a bank to pledge property to secure loans or deposits was sustained in Ahl v. Rhoads, 84 Pa. 319, and has also been upheld in other jurisdictions: Richards v. Osceola Bank, 79 Ia. 707; McFerson v. National Surety Co., 72 Colo. 482; Ward v. Johnson, 95 Ill. 215; Morse on Banks & Banking, section 63. In McFerson v. National Surety Co., supra, the court said (page 483) : "There is no question that a bank, in order to secure deposits, may give security for them. The giving of the indemnifying bonds was within the authority of the banks, and was a matter of ordinary business. The banks owned the securities pledged to the surety company, and had full right so to pledge them. It is further undoubted that when collateral has been pledged as security the pledgor has no right to such collateral until the purpose of the pledge has been fulfilled. It is unnecessary to cite authorities on these points."

There is authority to the contrary, holding that a bank is not authorized to pledge its assets as collateral security for funds deposited with it by certain of its customers, the theory being that to permit such act

would be to confer power on officers of the bank to give a preference to favored customers (Commercial Bank & Trust Co. v. Citizens Trust & Guaranty Co., 153 Ky. 566). This decision was based mainly on the construction of the banking laws of that state, it being held that since no express power to pledge assets was given in the provisions of the act relating to deposits, no such power would be implied. The court in this last-named case also recognized an exception where the law required security before a deposit could be made, as in the case of public funds, in which case it would necessarily have the right to furnish the required security. In the present case we consider it needless to enter into a discussion of the relative merits of the arguments for and against the exercise of a general power to secure deposits, not only because the funds here in question were of a public nature and consequently would properly fall within the exception of the Kentucky case, but also for the reason mentioned above, that a fair and reasonable construction of the Act of 1895 discloses an intent on the part of the legislature to grant the power exercised by the trust company in this case.

There is no force in the argument that the effect of upholding defendant's claim to the bonds is to illegally prefer one creditor over another. The transaction was entered into in good faith long before any question of insolvency arose. The property was transferred to secure the obligation when created. In absence of express limitation, the corporation would have the same right as an individual to prefer one creditor over another or to secure one while leaving others unsecured: Dana v. Bank of United States, 5 W. & S. 223; Ahl v. Rhoads et al., 84 Pa. 319.

Furthermore, the corporation secured the benefits derived from the deposit and cannot now escape its burdens by setting up a plea that it acted beyond the scope of its powers. "The rule of law is the same with corporations as with individuals. Neither can retain the

profits of a transaction, or anything of value received from the other party thereto, and set up ultra vires as a defense to the enforcement of the contract. To do so would be unconscionable, and is therefore impossible in a court of equity. He who seeks equity must do equity. The cases are legion, and from many courts, in which this sound rule of equity and common honesty has been enforced": Wrightsville Hardware Co. v. McElroy, 254 Pa. 422, 429. See also Lemmon v. E. Palestine Rubber Co., 260 Pa. 28, 33, to the effect that "A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance."

It is true the dispute here is between the banking department and one of the creditors of the corporation, but the former, under the Banking Act of 1923, merely exercises the rights and powers of a receiver appointed by any court (section 29 of act) and represents the creditors in their right to set aside any judgment, transfer or conveyance intended to give one creditor an unlawful preference over another. An estoppel binding on the corporation likewise is binding on its creditors or receiver: Manhattan Hardware Co. v. Phalen, 128 Pa. 110, 119; 14 C. J. 334, section 2174.

With respect to the argument that money on deposit in the name of defendant's predecessor in office, and turned over to defendant, was not covered by the bond, but little need be said. At the time defendant took office the funds standing in the name of his predecessor were already on deposit in the Carnegie Trust Company, and were permitted to remain, a transfer from one name to the other being made on the books. It is immaterial for the purpose of this case whether the preceding collector was acting within the scope of his duties by turning this fund over to his successor rather than paying it to the county treasurer. It was in fact turned over to defendant and the bond drawn to cover "all moneys deposited

with the Carnegie Trust Company......including any balance on deposit at the beginning of the term hereof, together with all moneys belonging and accruing to said deposits." In a subsequent paragraph of the obligation it is stated, "all moneys deposited with principal as depository are funds and moneys belonging to obligee in his official capacity." These provisions clearly contemplate and provide for the securing of the money then on deposit and which had been turned over to defendant from his predecessor in office. That the entire fund was public money is not disputed and regardless of whether the Carnegie Trust Company had been officially designated as depository of funds collected by defendant, the effect of the transaction was to secure the deposit, and, inasmuch as the company had authority to enter into the transaction, it was valid and binding against the company and those succeeding to its rights.

The decree of the court below dismissing plaintiff's bill is affirmed at plaintiff's costs.