## United Security Trust Company's Case.

Argued October 5, 1934.

430

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Frederick H. Spotts,* and with him *James A. Montgomery, Jr.,* of *Pepper, Bodine, Stokes & Schoch,* for appellants.

*Arthur 'Hagen Miller,* special counsel, with him *Shippen Lewis,* Special Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellee.

Opinion by James, J., March 13, 1935:

The United States Fidelity & Guaranty Company and the Maryland Casualty Company have appealed from a decree of the court of common pleas dismissing exceptions to the first and partial account of William D. Gordon, Secretary of Banking in charge of business and property of the United Security Trust Company of Philadelphia.

The essential facts are as follows: The trust company closed its doors on October 5, 1931, and the Secretary of Banking took possession and charge of its business. There was at that time on deposit various sums of money aggregating $51,693.16 in the names of trustees and receivers of some twenty-five bankrupt estates. The clerk of the United States District Court for the eastern district of Pennsylvania held as collateral to secure these deposits, United States Treas-

ury Bonds belonging to the United Security Trust Company in the face amount of $20,000. In addition to the collateral, the United States Fidelity & Guaranty Company had given its bond in the sum of $20,000 to secure payments of these deposits and the Maryland Casualty Company likewise gave a similar bond in the sum of $5,000. After the trust company was closed, the treasury bonds were sold by the clerk of the District Court for $18,892.48, which was distributed pro rata among the various receivers and trustees which left an unpaid balance of $32,800.68. Appellants later paid to the clerk the amount of their respective bonds amounting to $25,000. On February 3, 1932, the Secretary declared a 10% dividend, and on June 3, 1932, a second dividend of 15%, on account of which dividends $7,822.63 was paid on account of the various deposits as a result of which the trustees and receivers received the full amounts of their deposits. On December 9, 1932, the Secretary filed his first and partial account in which he set forth the amount of $32,200.68 as the deposits of the several trustees and receivers after crediting the pro rata share of the amount realized from the sale of the treasury bonds.

On January 3, 1933, pursuant to an order of the District Court, the trustees and receivers assigned all their interest in these deposits to appellants in the following proportions: to the United States Fidelity & Guaranty Company 80% thereof; and to the Maryland Casualty Company, the remainder, 20% thereof.

Appellants as assignees, filed identical exceptions to this account claiming that they were entitled to receive dividends on 25% of the total deposits of $51,693.16, undiminished by the proceeds realized from the sale of the treasury bonds, held as collateral by the clerk of the court. Appellee contends that this rule should not be applied urging that where bank deposits are

involved no one depositor should be permitted to obtain an unjust advantage over others, but such depositor holding collateral should be allowed to prove only that portion of his claim which remains after realizing on the securities sold. The appellants' contention involves the well recognized "Equity Rule" and the appellee's contention is what is commonly designated as the "Bankruptcy Rule." The court below supporting the contention of the appellee, held that the dividends should be based only on the total deposits less the sum realized from the sale of the treasury bonds and, therefore, awarded to appellants, the sum of $377.29 being the difference between the 25% of the net amount of the deposits as set forth in the account and the sum of $7,822.63, which had already been distributed as dividends to the trustees and receivers. The assignment of error, therefore, presents for determination the single question of what amount should have been adopted as the basis of calculating the dividends.

The question here involved, from an early date has been in both State and Federal courts, the source of much conflict of opinions, the latter courts gradually adopting the "Equity Rule" by a line of decisions culminating in Merrill v. National Bank of Jacksonville, 173 U. S. 134, where by a divided court, five members of that court favored the adoption of the "Equity Rule" while four members dissented and favored the adoption of the so-called "Bankruptcy Rule." Supporting the "Equity Rule" are also the following: Chemical National Bank v. Armstrong, 59 Fed. 372; Goodwin Mfg. Co. v. Pitts. & Buffalo Co., 265 Fed. 561; U. S. F. & G. v. Centropolis Bank, 77 Fed. (2nd) 913; American Surety Co. v. DeCarle, 25 Fed. (2nd) 18; Gamble v. Wimberly 44 Fed. (2nd) 329.

Many Pennsylvania authorities, among the earliest of which is Morris v. Olwine, 22 Pa. 441, and among the more recent that of Fulton's Estate, 65 Pa. Supe-

rior Ct. 437; Chambersburg Trust Co. v. Alexander, 102 Pa. Superior Ct. 158, 156 A. 615, laid down the rule that a secured creditor of an insolvent estate could prove and receive dividends on the full amount of his claim as it existed at the time of the insolvency without crediting either his collateral or collections made therefrom subject always to the proviso that dividends must cease when from them and from collections realized the claim has been paid in full.

It would, indeed, be a work of supererogation for one to discuss the masterful opinions written by Chief Justice Fuller of the United States Supreme Court sustaining the "Equity Rule" and Justices White and Gray supporting the "Bankruptcy Rule"; but upon examination of the decisions of the Federal Courts and decisions of our courts, we have been unable to discover any appellate decision involving the claims of depositors against an insolvent bank that has adopted the "Equity Rule," but we observe that in all of them there invariably exists a relationship based on loans, debts, obligations, or similar transactions that commonly arise between creditor and debtor in ordinary business and commercial life.

In viewing this question, we must recognize the fact that during the present economic depression the depositor-debtor relationship has received closer scrutiny from the courts and although the power of a trust company to pledge its assets to secure certain types of deposits has been recognized, (See, Cameron v. Christy, 286 Pa. 405, 133 A. 551; Cameron v. Allegheny Co. Home et al., 287 Pa. 326; 135 A. 133; National Surety Co. v. Franklin Trust Co., 313 Pa. 501, 170 A. 683) we believe that by so receiving security, that as to the portion of the deposits unsecured, the partially secured depositor should not be placed in a more advantageous position as to the unsecured portion than the ordinary depositor as to his entire amount, and

if we can distinguish between the depositor relationship in the present case and the authorities that have dealt with the rights of secured creditors, we should resolve in favor of a ratable distribution between depositors of the same class of deposits.

There clearly is and, indeed, should be a well recognized distinction between a creditor-debtor relationship based on a loan, debt, or similar transaction and a creditor-debtor relationship arising from a bank deposit, the same as there is a recognized distinction between a loan and a deposit.

A "deposit," says Justice CLARK, in Law's Estate, 144 Pa. 499, 22 A. 831, "is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum.

"It may or may not bear interest, according to the agreement. Whilst the relation between the depositor and his banker is that of debtor or creditor simply, the transaction can not in any proper sense be regarded as a loan, unless the money is left, not for safe-keeping, but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan."

This distinction has been followed elsewhere, notably in South Dakota, where in Allibone v. Ames et al., 68 N. W. R., 165, Justice HANEY said:

"A deposit is for the benefit of the depositor; a loan for the benefit of the borrower. It is true, a deposit may also benefit the depository, but such is not the primary object of the transaction. When the deposit is made for a fixed period, during which the depositor has no right to demand a return of the money, the transaction may be regarded as in all substantial respects a loan, but herein lies the essential distinction between a loan and a general deposit. In the former the person receiving the money agrees to return it at

a future time; in the latter, at any time it is demanded. If it is agreed that the money shall remain for a fixed period, it is a loan and not a deposit.''

The distinction between a loan and a deposit was recognized in the case of First American Bank '& Trust Co. et al. v. Town of Palm Beach, 96 Fla. 247, 117 S. R. 900, where the identical question involved in the present appeal was passed upon in which the facts presented were as follows: The Farmer's Bank & Trust Company closed its doors, with the Town of Palm Beach and the Board of Commissioners of Lake Worth Inlet each having on deposit there a large sum of money. Each of these depositors had demanded and received certain collateral in the form of securities and surety bonds. After the bank closed, the depositors realized a part of their respective debts by the conversion of these securities and the collection of the amounts pledged in the surety bonds. They then sought to prove before the receiver the full amount of their deposits, without deducting therefrom the respective amounts each had received from the collateral so held. The receiver refused to allow dividends on the full amount of their claims. Each of the claimants entered suit to compel a dividend on the full amount of its claim. A demurrer filed by the receiver to each of these actions was overruled by the lower court, whose decree on appeal to the Supreme Court of Florida was reversed in a well considered opinion delivered by Mr. Justice BULFORD, in which he reviewed many of the leading cases in which this bankruptcy rule has been upheld.

Justice BULFORD refused to follow the ruling in Merrill v. National Bank of Jacksonville, supra, declaring in part as follows:

''We do not think we are bound to follow that court in this case, however, because the facts are not identical, and also because state courts are not bound to

follow federal courts except in determination of federal questions, and the courts of last resort in quite a number of the states have declined to follow this decision and adopt the rule as therein enunciated, some of which are Washington, New Jersey, Ohio, Massachusetts, Tennessee, Maryland, Iowa, Kansas and Georgia.

"...... We are constrained to hold that, where a depositor in a state bank has obtained and received from such bank collateral security to protect the deposit, and thereafter while the deposit in the bank exceeds the value of the securities held, the bank becomes insolvent, and the depositor thereupon converts the securities so held into cash, he will be required to credit the bank account with the amount of the cash so received from the disposition of such securities, and may thereupon file his claim with the receiver of the insolvent bank for the amount of the balance of the deposits. To hold otherwise would be to say that the depositor secured by pledged collaterals would not only have advantage of stockholders and depositors without security to the extent of the bank assets pledged to him to secure his deposit, but would receive the further advantage of a dividend from the remaining assets on a sum equal to the value of the securities so held by him. In this case, each of the depositors would be allowed dividends from the remaining assets of the defunct bank on the respective sums which such depositor has already received in cash from the conversion of bank assets pledged to secure the deposit, and this is in addition to dividends in proportion to other depositors on the remainder of the deposit. This would be an advantage which we deem neither contracted for nor contemplated when the deposits were made and the collaterals were pledged."

With this reasoning and conclusion, we are in accord as it results in a just and fair method of distributing

 437

the moneys of the depositors, in whose behalf a ratable distribution should be made.

Appellee contends that the trust company had no power to pledge its assets to secure ordinary deposits, (now prohibited by the Act of May 15, 1933, P. L. 624, Art. X, §1004) in which class, under the recent case of Woodward's Petition, 307 Pa. 485, 161 A. 738, the deposits involved must be classified as private deposits, yet since the accountant recognized and accepted this situation without raising any question as to the rights of the depositors to have the advantage resulting from the sale of the treasury bonds, we believe he is bound thereby and cannot raise the question at this late day and, therefore, we shall not discuss it.

The assignments of error are overruled and the judgment is affirmed.