## Carson et al. v. Sinking Fund Commission

*John Barbe Cupp* of *Williamson & Cupp*, for plaintiffs.

*Marshall R. Anspach* and *Furst, McCormick, Muir & Lynn*, for defendant.

WILLIAMS, J., September 14, 1949.—This matter comes before the court upon the petition of the liquidating trustees of the nonliquid and depreciated assets of the Lycoming Trust Company for a declaratory judgment decree construing the following written memorandum of agreement:

"Agreement made this 8th day of November, 1933, by and between Lycoming Trust Company, of Williamsport, Pennsylvania, hereinafter referred to as Trust Company, and the County of Lycoming, acting through its duly elected and acting Sinking Fund Commission, hereinafter referred to as County.

"Whereas: The Lycoming Trust Company is the duly designated depositary of County funds known as County Sinking Fund 'B', the amount on deposit in said fund as of the date of this Agreement being Ninety Two Thousand Three Hundred and 89/100 ($92,300.89) dollars; and

"Whereas, in pursuance of the terms of an agreement dated the 1st day of February, 1932, between Lycoming Trust Company as depositary, The First National Bank of Williamsport, Pennsylvania, as Trustee, and the County of Lycoming, the Lycoming Trust Company has heretofore assigned to First National Bank as Trustee as collateral security for the further securing of the bond of Lycoming Trust Company given to the County of Lycoming for the securing of said sinking fund deposit, the following mortgages:

"Mortgage of Vallamont Land Company dated September 3, 1930, in the principal amount of $100,000, the amount now due thereon being $97,000, recorded in Mortgage Book Vol. 123, page 427, on which interest has been paid to November 20, 1931.

"Mortgage of Connell Anthracite Mining Company dated December 19, 1931, in the principal amount of $10,000, recorded in Mortgage Book Vol. 125, page 507, on which interest has been paid to September 1, 1932; and

"Whereas, Lycoming Trust Company is now operating under the provisions of the Act of General Assembly of the Commonwealth of Pennsylvania approved the 8th day of March, 1933, known as the 'Sardoni Act', whereby all non-preferred deposits in said Trust Company have become restricted and not payable on demand; and

"Whereas, the stockholders and creditors of Lycoming Trust Company, in accordance with the law, have approved and adopted a Plan of Reorganization of said Trust Company which will shortly become effective and which contemplates the immediate payment by West Branch Trust Company, with which said Lycoming Trust Company is to be merged, of forty (40) per cent. of the amount of restricted deposits and the assignment to liquidating Trustees of certain assets of the Trust Company for liquidation and distribution to and among the depositors and other creditors of said Trust Company in proportion to the respective amounts due said creditors, and said Trustees will issue to said creditors Lycoming Trust Company Creditors' Participation Certificates 'A'; and

"Whereas, the Trust Company has requested the County to execute a waiver approving said Plan of Reorganization and releasing said Trust Company and the West Branch Trust Company from any liability as to the remaining sixty (60) per cent of said sinking fund deposit, which waiver the County is willing to execute upon the terms and conditions set forth in this agreement.

"Now, Therefore, This Agreement Witnesseth:

"That the parties hereto, in consideration of the premises and the sum of One ($1.00) Dollar to the Trust Company in hand paid by the County, do hereby covenant and agree as follows:

"1. The Trust Company agrees to join with the County in directing the First National Bank of Williamsport, as Trustee, the present registered owner of the mortgages recited in the preamble of this Agreement, to assign and transfer said mortgages to the County to be held by the County as collateral security for the payment of a Participation Certificate representing sixty (60) per cent of said sinking fund deposit.

"2. The County hereby agrees to join with the Trust Company in cancelling the depositary bond given by the Trust Company to the County and the agreement entered into between the Trust Company, The First National Bank of Williamsport, Pennsylvania, and the County, also recited in the preamble of this Agreement.

"3. The County further agrees to execute and deliver to the Trust Company the waiver and release of sixty (60) per cent of the amount of said sinking fund deposit in the form executed by the other creditors of the Trust Company under and subject to the terms of this Agreement, a copy of which is to be attached to said waiver.

"4. The County shall have the right to proceed to realize on said mortgages retained by it as collateral for the remainder of said deposit, either by foreclosure or otherwise at any time when, in the judgment of the County, the same becomes necessary for its adequate protection.

"5. All payments made by the said Trustees to the County toward the liquidation of said Participation Certificate and all collections made on account of said mortgages shall be credited on account of the amount due on said liquidation certificate, and upon the payment at any time of the balance due the County, with

two (2) per cent interest, by West Branch Trust Company and/or the liquidating Trustees, said mortgages and liquidating certificate shall be forthwith assigned to either said Bank or said liquidating Trustees, or to such other person or corporation as may be designated.

"In Witness Whereof, the parties hereto have caused this Agreement to be signed by their duly authorized officers the day and year first above written.

"Lycoming Trust Company
"By Harold Brown
*"Vice President*

"Attest:
"Walton Geiger
*"Secretary*

"Lycoming County Sinking Fund Commission
"By Fred R. Applegate
*"President*

"Attest:
"Howard E. Sander
*"Secretary"*

It appears from the pleadings that on February 1, 1932, the Lycoming Trust Company of Williamsport entered into an agreement with the County of Lycoming and the First National Bank of Williamsport, Pa. Lycoming County agreed to deposit monies in the Lycoming Trust Company and the Lycoming Trust Company agreed to pay two percent interest on the daily balances of the county in the bank. The Trust Company further agreed to deliver to the county, a proper depository bond secured by the pledge of securities as collateral to the performance by such Trust Company of its obligations and undertakings in the agreement in question. The pleadings show that one of the assets pledged in this agreement was a mortgage of the Vallamont Land Company.

Due to its financial condition, the Trust Company was closed. In pursuance of a plan of reorganization, articles of merger were filed with the Secretary of the Commonwealth of Pennsylvania wherein and whereby the West Branch Trust Company was merged and consolidated with the Lycoming Trust Company, the new organization being called West Branch Bank and Trust Company. By Act of Assembly, all of the interest of the West Branch Trust Company became vested in the West Branch Bank and Trust Company as successor trustee.

It became necessary to secure the consent of the holders of 75 percent of the total amount of deposits of the Lycoming Trust Company to the reorganization and the County of Lycoming as one of the depositors was asked to consent to the reorganization, which it did, after requiring the execution and delivery by the Lycoming Trust Company of the agreement recited above in full. The Vallamont Land Company mortgage mentioned in the agreement was never given up by the county and was kept as collateral.

At the time of the reorganization all of the depositors received 40 percent of their deposits with the Lycoming Trust Company in cash. Since that time the liquidating trustees have caused to be issued participation certificates for the remaining 60 percent and at the present time have paid out a sum equal to 85 percent of the face amount of the certificates. The sum that each depositor has received from Lycoming Trust Company since the Bank closed has been 91 percent of the face amount due each depositor.

At the time the certificates were issued to depositors, the County of Lycoming, in the name of its sinking fund, received a certificate and since receiving this certificate has not only been paid what other depositors have been paid but has been paid the amount represented on the face of the certificate as being owed in

full, and in addition, has been paid some interest under the agreement of November 8, 1933.

The County of Lycoming is now demanding the balance of interest it claims is due and owing, a total of $7,478.08, being two percent interest due April 15, 1948.

The trustees argue that if they pay interest on the county deposit they are preferring the county to other creditors. In considering this argument it must be taken into consideration that the county, when it originally deposited money with the Lycoming Trust Company, only did so when security was given for the deposit. The security which the county continues to hold, the mortgage of the Vallamont Land Company, was one of the securities which it held as collateral when the deposits were originally placed with Lycoming County. Had the county insisted when the Lycoming Trust Company closed its doors it could have taken its security and collected principal and interest on the deposits, and if there was any deficiency in the collection, share with the rest of the creditors of the institution.

Instead of doing this, the commissioners, in order to assist those interested in the institution and the depositors, were willing to save the security they held under practically the same conditions as in their original agreement. That this has helped the depositors is proven by the fact that the Vallamont Land Company mortgage, which is still held by the commissioners, is still prized by the trustees of the depositors as an asset.

The commissioners have coöperated with the liquidating trustees. If there is any preference in the case, it was given by the commissioners to the Lycoming Trust Company depositors. The trustees cannot now complain about paying two percent interest, especially as the valuable Vallamont Land Company mortgage has been saved for them. It otherwise would have been

sold. The fact that the Lycoming Trust Company in its liquidation went through the ramifications of several other corporations and trustees makes no difference. They all took subject to the rights and liabilities of the agreement in question.

A mortgage owned by a bank may be pledged to secure a deposit: Ahl v. Rhoads, 84 Pa. 319. See also Cameron v. Christy, 286 Pa. 405. In Cameron, v. Allegheny County Home et al., 287 Pa. 326, it was held that there was no unlawful preference although the pledge of securities to the county in question was made within four months of the date when the banking commissioner took charge of affairs.

The receivers took subject to the agreement in question and, therefore, if they desire the mortgage, must not only pay the principal of the participation certificate, but also the interest according to the agreement.

It is true that as a general principle there is no preference between creditors. Plaintiff has cited numerous cases concerning this principle. The instant case is different. The trustees desire the security from which can probably be realized more than the amount involved in this dispute. Only as far as this security is concerned is the county preferred. This preference it got when the original deposit was made. In consideration, the bank got the sinking fund deposit.

### Declaratory Decree

And now, September 14, 1949, on consideration of the petition and answer of the parties for a declaratory judgment, the written memorandum of the Lycoming Trust Company and the County of Lycoming of November 8, 1933, is construed as follows:

1. That said agreement is in full force and effect as far as the County of Lycoming and the liquidating trustees of the nonliquid and depreciated assets of the Lycoming Trust Company are concerned.

2. That the liquidating trustees of the nonliquid and depreciated assets of the Lycoming Trust Company are liable to the Sinking Fund Commission of the County of Lycoming for interest at the rate of two per-cent on account of Lycoming Trust Company Creditors' Participation Certificate A, in accordance with the said agreement, the interest to run in favor of the county until paid.

3. That the liability of the liquidating trustees for full payment of the said certificates and interest only attaches thereon to the extent of the value of the security held by the sinking fund commission, but that if the liquidating trustees are of the opinion that they desire the security held as collateral by the sinking fund commission and are of the opinion that they will realize a greater amount than owed by the trustees to the county, then the trustees have the right to immediately pay interest due and owing and secure possession of the mortgage security.