PERKINS *et al. v.* STATE *ex rel.* ROBERSON, Atty. Gen.

[94 South. 460.  No. 22557.]

1. DEPOSITARIES.  *Municipal corporations.  City's contract, though ultra vires, not illegal if not prohibited by charter; city, but not other party, may plead ultra vires; city not estopped by acceptance of depository's bond from claiming it to be ultra vires because not signed by surety company; where bank received benefit of depository's bond, neither bank nor sureties could avoid liability on bond because not executed by surety company.*
   Although a contract with a municipal corporation may be *ultra vires,* still it is not illegal if not prohibited by its charter.  While the municipality may successfully interpose a plea of *ultra vires* when sued on such a contract, the other party thereto cannot set up such a plea to escape liability.  Therefore, where a municipality has selected a depository for its public funds in accordance with the statute, except the depository bond accepted by it from the bank as such depository is made by individuals as sureties instead of by a surety company, as required by the statute, although the municipality is not estopped by the act of its municipal officers in accepting such bond, the principal and sureties thereon cannot escape liability on such bond on that ground, provided the bank which is selected as such depository gets the benefit of such bond by acting as the actual depository for such municipality.

2. DEPOSITARIES.  *Sureties on municipal depository's bond held estopped from claiming want of consideration, because bond unauthorized by law.*
   The bank selected as such depository having received the consideration for the execution of such bond, namely, the municipal deposits for the period covered thereby, the sureties thereon are estopped to claim that such bond was unauthorized by law, and that therefore there was no consideration moving to them for

its execution, because the consideration moving to the bank as such depository was sufficient consideration for the execution of the bond by the sureties; therefore, so far as such principal and sureties are concerned, said bond is to be treated in all respects as if the municipal depository statute had been complied with.

3. SUBROGATION. *State Banking Department making payments to city after failure of municipal depository held subrogated to rights of city against depository bond and sureties.*     .

Where a bank as a municipal depository fails, and its assets are being administered by the State Banking Department as provided by law, and such municipality proceeds under section 3485, Code 1906 (section 2823, Hemingway's Code), against such bank as municipal depository and the State Banking Department to establish, and does establish, a trust in the assets of such depository for the payment of the amount of deposits due by such depository to the municipality, which thereby results in the State Banking Department being forced to pay out of the State Bank Guaranty Fund a portion of the amount of deposits due by such depository to the municipality, the State Banking Department under the provisions of section 36, chapter 124, Laws 1914 (section 3594, Hemingway's Code), is subrogated to all the rights and claims which the municipality had against such depository, and by virtue of such subrogation succeeds to the rights of the municipality as against the depository bond and the sureties thereon.

4. DEPOSITARIES. *Sureties on depository's bond not liable on depository's failure to pay deposits subsequent to period for which it was appointed depository; on depository's failure to pay city deposits on demand, the sureties become liable therefor.*

Where a municipal depository is selected for a period of two years, and executes a bond as such in favor of the municipality, and at the end of said period is again selected for a period of one year, and executes a bond as such covering that period, and during the latter period the bank as depository becomes insolvent, and the municipality demands of it the repayment of its deposits, which the bank is unable to make, the sureties on the first bond so executed are not liable for such deposits, because the life of that bond had expired, but the sureties on the second bond are, because under the depository law the depository becomes a mere debtor to the municiplity, and breaches its bond when payment is demanded and refused.

APPEAL from chancery court of Harrison county.

HON. CLAYTON D. POTTER, Special Chancellor.

Bill by the state, on the relation of Frank Roberson, attorney-general, against R. R. Perkins and others. From judgment overruling demurrers to bill, defendants appeal. Reversed in part, affirmed in part, and remanded.

See, also, *Perkins* v. *State* (Miss.), 91 So. 704.

*Gex & Waller, White & Ford, Gardner & Brown, J. H. Leather,* and *J. J. Taylor,* for appellant.

We contend that the bill in this cause cannot be maintained against the sureties on either bond, because:

(1) The obligation sued under was a contract with the city, by which the sureties under their bond agreed to indemnify the city against loss; the city having sustained no loss, the condition of the bond was never broken and therefore no action could be brought on the bond.

(2) Since the bond sued under was not one as provided for by law, and was held to be void by this court as an indemnifying bond to the extent of protecting the city deposits, the money of the city on deposit was secured as a preference fund to be paid as a preference fund to the city, and since the bank had abundant assets to pay this deposit as a preference fund, the city sustained no loss. and therefore there is no liability under the bond, the money being protected as a trust fund.

(3) The Bank of Commerce not having been selected as depository as by law required, there was no liability under the bond, because the bond guaranteed money of the city placed in the bank, as a city depository.

(4) The banking department has no right to file this suit, because the money was not paid out by virtue of the guarantee feature of the banking law for which the banking department was created, but by virtue of the trust feature acquired by the deposit and if any action could be

maintained, it would have to be maintained through the liquidators as receiver, after all assets have been collected.

(5) The bill is filed prematurely, being filed before the affairs of said bank have been liquidated.

I.    The obligation sued under was a contract with the city, by which the sureties under their bond agreed to indemnify the city against loss; the city having sustained no loss, the condition of the bond was never broken, and therefore no action could be brought on the bond. *Chesire Bank* v. *Robinson,* 2 N. H. 126; *Jackson* v. *Hopkins,* 24 S. E. 234; Corpus Juris, 9, pages 67, 75, 78, 79.

II.    Since the bond sued under was not as provided for by law, and was held to be void by this court as an indemnifying bond, to the extent of protecting the city deposits, the money of the city on deposit was secured as a preference fund, to be paid as a preference fund to the city, and since the bank had abundant assets to pay this deposit as a preference fund, the city sustained no loss, money being protected as a trust fund.

The purpose of the act was primarily to provide that the public funds should draw interest from the successful bidder, who was selected depository of the county or the municipality as the case might be, the statute providing that the bank offering the largest return on the deposits should be selected the depository. A full scheme for the protection of public money was also provided for in these statutes, in substance as follows: 1. The county or the municipality as the case might be, must advertise for bids from banks to be selected as depository; 2. The bank offering the largest return for the use of the public money, who will give a bond as provided by law, is the bank which the statute provided must be selected; 3. The statute provides that the depository must be selected only from year to year, for the county, and for the city every two years; 4. The statute provides further that before a bank can become a county or city depository, a certificate to that effect must

be issued either by the president of the board of supervisors, or the city commissioners; 5. The statute then provides a number of penalties for the improper use of public moneys, etc.; 6. When that law was enacted, section 3485 of the Code of 1906, which was brought forward by section 2823 of Hemingway's Code, was in full force and effect. That section provides in substance that all moneys deposited in banks in the name of the tax collectors, or other public officers are trust funds, and in the event of the failure of the bank, they must be paid first in preference to all others. The statute further provides that the moneys of the bank, or the assets of the bank, could not be taken out by the general creditors until the public funds were first paid. In other words, the statute especially created this fund a trust fund, primarily secured by all the assets of the bank.

So that certainly in 1916, and at all times, prior thereto, and since the enactment of section 3458 of the Code of 1906, section 2823, Hemingway's Code, all public funds were protected as a special trust fund under these statutes. In the case at bar, it must be remembered that it is only by virtue of this section that the city could recover its money at all. The money sued for in this case was money on deposit, not in the name of the city; but in that of its tax collector who had not, prior to that time, turned same over to the city, the obligation of the bonds being only to cover money to the credit of the city. However, by virtue of the section hereinabove mentioned the money was protected as a trust fund. *U. S. F. & G. Company* v. *First State Bank of Shaw*, 102 Miss. 91; *Bank of Commerce* v. *Clark*, 75 So. 595; *Bank of Commerce* v. *City of Gulfport*, 117 Miss. 591.

III. The Bank of Commerce not having been selected as a depository as by law required, there was no liability under the bond because the bond guaranteed money of the city placed in the bank, as a city depository. 9 Corpus Juris, 20; *Town of Kirkwood* v. *Meramec Highlands Co.*,

95 Mo. App. 637, 68 S. W. 761; *Keith County* v. *Ogallalla Power & Irrigation Co.,* 89 N. W. 375.

Our friends, we assume, will state that if the bonds hereinabove referred to, could not be sued under as statutory bonds, they could at least be sued under as common-law obligations, but we state in answer to that, that it has been held time and again that when a bond is given as a statutory bond, suit cannot be thereunder filed, as a common-law obligation. *Republic I. & S. Co.* v. *Patullo,* 125 Pac. 923; *San Francisco Lumber Company* v. *Bibb, supra,* and also in the case of *Schaughnessy* v. *Am. Surety Co.,* 69 Pac. 250, 71 Pac. 601; *Montague & Co.* v. *Furness,* 145 Cal. 205, 78 Pac. 640.

IV. The banking department has no right to file this suit, because the money was not paid out by virtue of the guarantee feature of the banking law, for which the banking department was created, but by virtue of the trust feature acquired by the deposit and if any action could be maintained, it would have to be maintained through the liquidator as receiver, after all assets have been collected. The bill is filed prematurely, being filed before the affairs of said bank have been liquidated.

We discussed this subject hereinabove, and all we care to add thereto is that since the allegations of the bill of complaint must be taken most strictly against the pleader, that the bill failing to show that the bank has been liquidated, and all its assets collected, the bill is prematurely filed, and should not be sustained.

As a matter of fact, which can be established from the court records of Harrison county, Mississippi, there are now suits pending by the liquidator, which have not been determined—some of which will probably be won by the liquidator, and to that extent certainly the guarantee fund, if it has any right in this matter, will be reimbursed, and until it has determined just what it will have to pay out, we submit that it is not in a position to state what part of this fund it will lose.

From the foregoing we submit that the demurrer should have been sustained. That the first opinion of the learned chancellor was correct, and that this court should sustain that first opinion and reverse the cause, and enter a judgment herein sustaining the demurrers.

*Roberson & Yerger,* for appellee.

The bonds referred to in the bill were executed in order that the bank might qualify as depository for the moneys of Gulfport; but for some reason the proper kind of bonds were not executed on account of which the bank was not in law the legal depository for the moneys of Gulfport and the city fathers exceeded their authority in keeping the city's money in said bank; but this was a situation that could not be taken advantage of by the bondsmen; the city, and only the city could say that the city did not have to rely on the bondsmen to recover the deposit in question. It is true that the bonds were *ultra vires,* but it is further true that they were not illegal and, therefore, it follows that the bondsmen could not set up the plea of *ultra vires* when sued upon the bonds. *City of St. Louis* v. *Davidson,* 22 Am. St. Rep. 764.

It cannot set up such plea to escape liability under the contract. "Sureties on bonds to a corporate obligee are liable although the transaction may be *ultra vires* as to the corporation; the government or municipality only can question the validity of the transaction, or object to a non-compliance with formalities which are for its protection." 32, 26, 99 N. W. 1097.

So therefore we find that had the city of Gulfport sued the bondsmen, then the bondsmen could not have set up as a defense the fact that the bonds were not such bonds as the city could take. The bondsmen would have been estopped; they could not have taken advantage of their own wrong.

The bondsmen being estopped from setting up such a defense, it then follows that applying that doctrine in this

case we find the bondsmen cannot deny that the bank was the legal depository of the city of Gulfport. The sureties there are placed in the position just as though the depository laws of our state provided that depository of the city of Gulfport. The sureties there are placed in the position just as though the depository laws of our state provided that depository bonds could be made by having individuals as sureties. If that be true then section 3485 would have nothing to do with this case in so far as these bondsmen are concerned, because the law has said to them: "You made these bonds and you cannot say you did an illegal act by doing so, and at the same time profit by your own wrong." Then if the bondsmen are compelled to say that the bond called for by the depository law was given, it follows that the rights and liabilities of the bondsmen are to be determined, in so far as this proceeding is concerned, just as though all requirements of the depository statute with reference to the character of bonds to be executed had been complied with. In other words section 3485 must be considered as having nothing to do with this cause because the Bank of Commerce had qualified as the legal depository of the city of Gulfport; that is, the bondsmen can be heard to say nothing to the contrary. Suppose the city had sued the bondsmen for the deposit in question and had recovered judgment for the full amount thereof which judgment had been paid then it would follow that the bondsmen would have been subrogated to the city's right to a preference, for the patent reason that the bondsmen being estopped from denying that the bank was the legal depository of the city then section 3485 of the Code of 1906, would have no application. Supporting this line of reasoning, we call the court's attention to the case of *Bank of Commerce* v. *Clark,* 75 So. 595, wherein the court stated:

"The depository law of our state (Acts 1908, ch. 96, as amended by Laws 1910, ch. 224), when put in operation as provided therein, supersedes and annuls the security and protection of section 3485, Code of 1906, and to that extent supersedes the said code section."

We find appellants in a position where they cannot deny that the depository law was in operation, and so situated even though they had paid the deposit to the city, they could not have been subrogated to the city's rights to a preference. The banking department having paid a dividend of forty-one thousand, three hundred and eighty dollars and fourteen cents to the city out of the guaranty fund is by law the owner of all rights which the city may have had as against others in reference to such deposit. Citing Hemingway's Code, section 3594; 32 Cyc. 70) ; *Lewis, Adm., v. U. S. F. & G. Am. Cases,* 1913, page 564; 32 Cyc. 30; 13 Corpus Juris, page 334; *Storm* v. *United States,* 94 U. S. 76.

Appellants contend that if any action could be maintained it would have to be maintained through the liquidator of the bank. We submit such a contention is not sound. In the first place there is no such thing under our law as a "liquidator" of a bank. Section 3594, which is set out *verbatim* heretofore in this brief, the gist of that part of the statute is that the bank had with reference to any deposit on which a dividend has been paid out of the guaranty fund.

Appellants also contend that this court in case of *Bank of Commerce* v. *City of Gulfport,* 117 Miss. 591, held that the deposit in this case was protected by section 3495, Code of 1906, and should be paid as a preferred deposit, and appellants contend further that any payment out of guaranty fund was without authority of law. The court will bear in mind that in the above case the city of Gulfport was attempting to get its money and the court held that the city could set up the fact that the bank was not the legal depository and on that account was protected by section 3495, Code 1906, and should be paid as a preferred deposit, and appellants contend further that any payment out of guaranty fund was without authority of law. The court will bear in mind that in the above case the city of Gulfport was attempting to get its money and the court held the city could set up the fact that the bank was not

the legal depository and on that account was protected by section 3485, Code of 1906. The court did not in that case say that the bondsmen could make any such contention, and we have attempted to show heretofore in this brief that our court would have said, if it had spoken as to that feature of the case, that the bondsmen could have made no such contention.

The case referred to did not say that the city deposit was not subject to the guaranty act. We say that the deposit, in so far as the city was concerned, was guaranteed as well as being a trust fund; that when the city received its money from the bank that money was paid out of the guaranty fund to pay the amount sued for herein; that it makes no difference where the money came from, even if it had been paid out of the assets of the bank; when so paid it indirectly had the same result in so far as the guaranty fund is concerned as if it had been paid out of the guaranty fund.

With reference to the case of *U. S. F. & G. Co.* v. *Wilkinson County*, 69 So. 865, which is so confidently relied upon by appellants, signers of bond Exhibit "A," we think the lower court answered the argument advanced by appellant in which the above case is used as an authority. The lower court very aptly said in overruling the demurrers to the amended bill: "It may be true that neither of the bonds in this case were in force at the time that the bank failed, but the bill charges that there had been no accounting and that the money deposited during the period covered by the bonds had never been paid."

In the case of *Fidelity & Deposit Company* v. *Wilkinson County*, 69 So. 870, our supreme court said: "While it may be true, and doubtless is, that had no new arrangements been made by the county with the bank for the year 1913 the liability of the sureties on the bond for 1912 would have continued until all the money received by the bank from the county had been paid to the county, etc. . . . "

Conclusion. It is respectfully submitted that the decree overruling the demurrers should be sustained and the decree of the lower court affirmed.

ANDERSON, J., delivered the opinion of the court.

STATEMENT OF THE CASE.

The original bill as amended was filed in this case by the State Banking Department, on the relation of Frank Roberson, attorney general of the state, appellee, against the city of Gulfport and R. R. Perkins and others, appellants, sureties on two depository bonds executed by the Bank of Commerce of Gulfport as municipal depository for said city, to recover of such sureties by subrogation to the rights of the city of Gulfport something over forty thousand dollars which appellee paid said city out of its bank guaranty fund, being the amount the city would have lost on account of the insolvency of said bank except for such payment. Appellants filed demurrers to the bill, which demurrers were overruled, and thereupon this appeal was granted to settle the principles of the cause. It will probably be well to set out here the original bill as amended. Leaving off the formal parts, it follows:

"(1) That the said Board of Bank Examiners is a board created by the laws of the state of Mississippi, and that E. F. Anderson, S. W. Wardlaw, and J. B. Salmon are the duly elected, qualified, commissioned, and acting Bank Examiners of said state, and that Frank Roberson is the duly elected, qualified, commissioned, and acting attorney-general of the state of Mississippi.

"(2) That the Bank of Commerce of Gulfport was a banking corporation, organized under the laws of the state of Mississippi, with its domicile at Gulfport, Harrison county, Miss., and that said bank, for many years prior to December 14, 1916, carried on a general banking business in said city of Gulfport, and that on said date of December 14, 1916, said bank, being insolvent, was taken

charge of by the said Board of State Bank Examiners for liquidation under the banking laws of the state of Mississippi; said board last aforesaid took charge of all the property and assets of said bank, and undertook to and did liquidate the affairs of said bank in a diligent, honest, and expeditious manner, as required by the state banking laws, and at the instance of the officers of said bank.

"(3) That on the 14th day of December, 1916, the city of Gulfport, in the name of its then tax collector, had on deposit in said Bank of Commerce of Gulfport, Miss., the sum of fifty thousand three hundred nineteen dollars and forty-nine cents of the public moneys of the said city of Gulfport, Miss.

"(4) That, at the time said moneys of said city of Gulfport was deposited in said bank, and at the said time said bank was taken charge of by said Board of State Bank Examiners, and at all other times during the years 1915 and 1916, the said Bank of Commerce was the depository of said city of Gulfport.

"(5) That, under and by virtue of a decree of the chancery court of Harrison county entered on the 6th day of July, 1917, in the case of *City of Gulfport* v. *Bank of Commerce of Gulfport and J. S. Love, Liquidator,* No. 5288, which decree was by the supreme court of Mississippi affirmed on April 22, 1918, the said Board of State Bank Examiners of said state, on the 17th day of June, 1920, paid to the city of Gulfport out of the 'bank depositors' guaranty fund' the sum of forty-one thousand three hundred eighty dollars and fifty-four cents on account of its deposit heretofore referred to, the assets of said bank not having been sufficient to pay said sum.

"(6) That the said Bank of Commerce was, on January 6, 1914, selected as the depository for the funds of said city of Gulfport, Miss., for the years 1914 and 1915, and that said bank did not execute a bond in favor of said city with reference to said deposit until October 7, 1915, at which time a bond, purporting to have been signed on September 24, 1915, was, by the mayor and commissioners of

said city of Gulfport, being the officers so authorized to do, approved and accepted, a copy of said bond being hereto attached, marked Exhibit A and made a part hereof, said selection of said bank as the depository aforesaid being made after due notice of the purpose of said city to select a depository for its funds had been made.

"That on December 13, 1915, the mayor and commissioners of said city of Gulfport made publication in the Gulfport Daily Herald, a newspaper published at Gulfport, Miss., to the effect that the board of city commissioners would, on the 4th day of January, 1916, receive bids from banks to act as depository of the funds of said city for the year 1916, and that, pursuant to said advertisement and publication of said notice, the said Bank of Commerce was selected as such depository, and as such depository executed and turned over to said city of Gulfport a bond in the penal sum of fifty thousand dollars, a copy of which said bond is hereto attached, marked Exhibit B, and made a part hereof.

"(7) That at all times during the years 1915 and 1916 the said Bank of Commerce of Gulfport, Miss., was insolvent, and could not at any time have paid its depositors in full the amounts of their respective deposits. That the amount on deposit in said bank on January 14, 1916, and for more than twenty-four months previous thereto, and at the time the said Bank of Commerce qualified as depository under and by virtue of Exhibit B hereto, was the sum of fifty thousand three hundred nineteen dollars and forty-nine cents of the funds of said city of Gulfport, Miss. That the complainants do not know what part of the depositors could have been paid on the said date of January 14, 1916, or at the time the said Bank of Commerce qualified as depository for the year 1916, but they state the fact to be that said bank, at the time that it qualified as a depository for the city of Gulfport under Exhibit B hereto was insolvent, and could not have paid the deposits of the city of Gulfport had it been called on so to do.

"(8) Complainants further state that the moneys of the said city of Gulfport, during the years 1914, 1915, and 1916, were deposited as aforesaid in the said bank, and that the bonds as set out in Exhibits A and B were executed to and in favor of said city of Gulfport for the purpose of guaranteeing to the city of Gulfport the payment of the moneys so deposited as aforesaid.

"(9) Complainants further state that, on December 14, 1916, previous to the time said bank was taken charge of by said Board of State Bank Examiners, said city of Gulfport, through its duly authorized officials, demanded of said bank the payment of said deposits above referred to, at that time being in said bank, but that said bank did not and could not, on account of its then insolvent condition, pay said deposit.

"(10) Complainants further state that, by virtue of the obligations assumed by the persons signing the said bonds, as shown by Exhibit A and Exhibit B to the bill of complaint, said city of Gulfport had the legal right to demand of the sureties on said bonds the payment of the deposits aforesaid. The complainants state that the said city of Gulfport proceeded to file suit in the chancery court of Harrison county, being case. No. 5280, against the Bank of Commerce and the Board of State Bank Examiners, seeking to have the said Bank of Commerce and the Board of State Bank Examiners ordered to pay said deposits; that a decree was granted ordering the said Bank of Commerce and the said Board of State Bank Examiners to pay said deposits, which was done by the payment of twelve thousand six hundred six dollars and fifty cents out of the liquidated assets of said bank, being all that could be realized from said liquidated assets, and the sum of forty-one thousand three hundred eighty dollars and fifty-four cents out of the 'bank deposit guaranty fund;' the total of the two said sums being equal to the principal of said deposits and interest thereon. It is further stated that the assets of said bank at the time it failed, taking into consideration the double liability of the stockholders as

an asset, was insufficient to pay the deposits of the city of Gulfport and the common depositors of said bank, that the assets of said bank were insufficient in the amount of approximately one hundred thousand dollars for paying the city of Gulfport its deposits and the ordinary depositors their deposits, although it is conceded that, at the time said Bank of Commerce was taken charge of by the Board of State Bank Examiners, the assets of said bank were sufficient to pay the city of Gulfport, but were not sufficient to pay both the city of Gulfport and the common depositors, the assets of said bank, including the double liability of stockholders, being insufficient for said purpose in the amount of approximately one hundred thousand dollars.

"(11) Complainants state that, said Board of State Bank Examiners, having been forced to pay said sum of forty-one thousand three hundred eighty dollars and fifty-four cents, to the said city of Gulfport, covering its deposits and interest thereon, out of the guaranty fund, the state of Mississippi, acting through the said Board of State Bank Examiners, is entitled to be subrogated to the rights of the said city of Gulfport with reference to the said bonds, and the sureties thereon, as shown by the Exhibits A and B hereto, for the purpose of reimbursing the state bank depositors' guaranty fund to the extent of the disbursements aforesaid.

"(12) Complainants further state that one J. K. Milner signed the bond referred to as Exhibit A, and became bound by the obligations therein assumed, but that the said J. K. Milner is deceased, and that the defendant Mrs. Rachel Milner is the administratrix of the estate of the said J. K. Milner, deceased.

"(13) That the said city of Gulfport is made a party hereto, for the reason that the complainants claim to be subrogated to the rights of said city of Gulfport with reference to the said bonds aforesaid, and the deposits secured thereby, and that said city of Gulfport is made a party defendant for no other purpose whatever, and no

money judgment is sought to be obtained against the said city of Gulfport.

"(14) Wherefore complainants pray that proper process issue for the said defendants, commanding them to appear at the next regular term of this honorable court and plead, answer, or demur to this bill of complaint, but not under oath, the oath or oaths to any answer or answers being hereby expressly waived, and that the court appoint a master or commissioner to examine the books and records of the said Bank of Commerce of Gulfport as of the time that the said bank ceased to be the depository of the funds of said city of Gulfport, under and by virtue of Exhibit A hereto, and to ascertain therefrom and to report to this honorable court what proportion of the deposits then to the credit of the said city of Gulfport could have been paid in cash to said city, had lawful demand been made on said bank for the said city's said deposits, and that on final hearing a decree be entered against the defendants herein, except the city of Gulfport, ordering the said defendants to pay to said complainants the said sum of forty-one thousand three hundred eighty dollars and fifty-four cents and interest thereon at the rate of six per cent. per annum from June 15, 1920, until paid, and, if mistaken in the relief prayed for, then for such other, further, and different relief as the facts set forth may show complainants entitled to, and for general relief, and as in duty bound, complainants will ever pray," etc.

### OPINION OF THE COURT.

The several demurrers raise the question of the legal sufficiency of the bill; and, in addition, some of the sureties on the first bond by their separate demurrer raise the question whether the sureties on that bond are liable, even though those on the second bond are.

We will consider first the question whether as to the bank as principal and its sureties on the two bonds involved the bank became the legal depository for the city of Gulfport; for all other contentions by appellants hav-

ing any appearance of merit depend on the solution of that question. Answering that question in the affirmative, as will be done, we will then consider whether there is lia-bility on both bonds or only on the second one.

There were involved in the case of *Bank of Commerce* v. *City of Gulfport,* 117 Miss. 591, 78 So. 519, these iden-tical bonds, as well as these same deposits. That was a suit by the city of Gulfport against Bank of Commerce and the State Banking Department to establish a pref-erence in favor of the, city under section 3485, Code of 1906 (section 2823, Hemingway's Code), against the assets of said bank, in liquidation by the Banking Department, for the payment of said deposits. The city claimed that these deposits "were not otherwise secured" in the sense of section 38, chapter 207, Laws of 1916 (section 3596, Hemingway's Code), and therefore the bank held them as a trust fund under said section 3485, Code of 1906 (section 2823, Hemingway's Code), because said depository bonds were made by individuals as sureties, and not by a surety company, as required by the state. The court so held, and said that, so far as the city was concerned, the bonds were *ultra vires,* and that the city was not estopped from so claiming by the acts of its officers in accepting the bonds and dealing with the bank as its depository. The court, however, expressly pretermitted the question here involved —whether the sureties would be estoped to claim that the bonds were *ultra vires.* The court said that question was not presented by the record.

The authorities seem to be uniform to the effect that, although a contract with a municipal corporation may be *ultra vires,* still it is not illegal if not prohibited by its charter; that, while the municipality may successfully in-terpose a plea of *ultra vires* when sued on such a contract, the other party cannot set up such a plea to escape liability. *St. Louis* v. *Davidson,* 102 Mo. 149, 14 S. W. 825, 22 Am. St. Rep. 764, and notes; 32 Cyc. 26. Under our laws a municipal depository is a *quasi*-public officer. In a very large sense it is treasurer of the municipality. Through

it the funds of the municipality are preserved' and disbursed. Therefore its depository bond may be likened in its purpose and effect to bonds of public officers. Sureties on official bonds are estopped from denying liability thereon where such bonds have accomplished the purpose for which they were executed.

The depository bonds here in question accomplished the effect of their execution and acceptance. By virtue thereof the Bank of Commerce actually become the depository of the city of Gulfport, and was treated and dealt with as such by the city. The bank received the consideration for the execution of the bonds—the municipal deposits—and this consideration moving to the bank was sufficient to bind the sureties. These depository bonds, so far as the sureties thereon are concerned, are to be treated in every respect as if they were legal. It follows from these views that if the city of Gulfport had sued on said bonds the sureties could not have successfully defended on the ground that the deposits in question were secured under section 3485, Code of 1906 (section 2823, Hemingway's Code), and therefore a preference charge against the assets of the bank. Only the city could make that claim.

The State Banking Department, by virtue of having paid the city of Gulfport the amount of its deposits remaining in the Bank of Commerce at the time of its failure, became subrogated under section 36, chapter 124, Laws of 1914 (section 3594, Hemingway's Code), to all the rights of the city as against said depository bonds and the sureties thereon. Among other things that section provides:

"Provided, however, that whenever the board of bank examiners shall have paid any dividend to the depositors of any failed bank out of the bank depositors' guaranty fund, then all claims and rights of action of such depositors so paid shall revert to the board of bank examiners for the benefit of said bank depositors' guaranty fund, until such fund shall have been fully reimbursed for payments

made on account of such failed bank, with interest there-on at three per cent. per annum."

This result seems highly just. The sureties on these bonds agree to indemnify the city against loss on account of its selection of their principal—Bank of Commerce—as city depository. Why should they not carry out their contract? We see no good reason why they should be relieved.

Are the sureties on the first bond liable or only those on the second bond? This, is solved by the case of *Fidelity & Deposit Co.* v. *Wilkinson County,* 109 Miss. 879, 69 So. 865. The second bond covered the year 1916—the year the bank failed. The city demanded payment of the bank of the deposit due it on the 14th of December, 1916, which demand was refused; thereupon the bank closed its doors, and soon thereafter the State Banking Department took charge of its assets for liquidation. There had been no default on the part of the bank during the life of the first bond. Under that case the bank as depository was a mere debtor to the city, and there was no breach of its depository bond until the city demanded payment and the bank refused it. This occurred during the life of the second bond. No such demand and refusal took place during the life of the first bond. We hold, therefore, that there is no liability on the first bond, but that there is on the second.

The court below held that both bonds were liable.

*Reversed in part, affirmed in part, and remanded.*