**AUSTIN, Banking Commissioner, v. LAMAR COUNTY. (No. 3606.)**

Court of Civil Appeals of Texas. Texarkana. Dec. 3, 1928.

Rehearing Denied Dec. 6, 1928.

Jno. W. Goodwin, L. C. Sutton, and Joe T. Goodwin, all of Austin, for appellant.

Beauchamp & Lawrence, Park & Dohoney, and W. F. Moore, all of Paris, for appellee.

HODGES, J. At the beginning of the year 1925 the commissioners' court of Lamar county advertised for bids from banks for the purpose of selecting a county depository for the ensuing two years. No bids were offered. On March 26, 1925, the commissioners' court, acting under the provisions of article 2445, Revised Civil Statutes of 1911, designated three of the local banks situated in Paris, the county seat of Lamar county, as depositories. Among the banks so designated was the First State Bank of Paris, which was then a banking corporation organized under the laws of Texas. In due time the First State Bank presented a bond in the sum of $50,000, which was approved by the commissioners' court. This bond by its terms began on the 29th day of February, 1925, and expired at the end of one year. On the date of the expiration of the bond Lamar county had on deposit with the First State Bank the sum of $226,004.83. Some time in March or April, 1926, because of the expiration of the bond, and on account of the large amount of deposits which the county then had in the First State Bank, the commissioners' court, through its county judge and county auditor, demanded a new bond as security for the county deposits. After some negotiations it was agreed between the bank and the county officials that a new bond should be executed by the bank, and that until the new bond was made and delivered the bank would pledge its bills receivable, consisting of vendor's lien notes, as security for the county deposits. In accordance with that agreement, and in pursuance of previous authority from the board of directors of the bank, vendor's lien notes aggregating $74,231.24 were delivered to John S. Baker, county auditor, to be held by him, as the representative of the county, as security for the county deposits then in the First State Bank. The delivery of the notes for that purpose was made on March 13, 1926. Lamar county had on deposit with the First State Bank on that date the sum of $184,068.-26. On May 26, 1926, the First State Bank was closed and its affairs were placed in the hands of the commissioner of banking. After closing the bank, and while the bank still owed the county more than $75,000, Chas. O. Austin, then banking commissioner, demanded of Lamar county the surrender of the notes above referred to, claiming them as a part of the assets of the insolvent bank to be administered by him. Upon the refusal of the county to comply with that demand he filed this suit for the recovery of the notes.

The suit is based upon the proposition that the bank had no authority to pledge the notes to secure its indebtedness to Lamar county; that the pledge was ultra vires, illegal, and contrary to public policy. The county answered by a general denial, and specially pleaded the conditions under which the notes were taken as security for the deposit, alleging that they were pledged to the county in consideration that the bank would be permitted to retain the county deposits, and as collateral security in addition to the existing bond previously made. Those facts were urged as an estoppel against the banking commissioner's right to recover the pledged notes without first reimbursing the county for the loss of its deposits. The case was submitted to the court without a jury, and a judgment rendered in favor of the county. The commissioner of banking prosecutes this appeal from that judgment.

■■ There appears to be no dispute in the evidence adduced on the trial below. The appellant thus states the ground upon which he relies for a reversal of the judgment:

"The holding of the court that the pledge by the First State Bank of its bills receivable to Lamar County to secure its deposit was valid and lawful is erroneous because, the statutes of this state having prescribed the manner in which county depositories should secure county funds, they would have no authority to secure such funds in any other manner; and the pledging of its bills receivable not being one of the methods prescribed by the statutes securing such deposit, it would have no authority to secure the same by pledging its bills receivable, and such pledge would be illegal, ultra vires, contrary to public policy and void."

Other propositions in appellant's brief reiterate substantially the same grounds in a different form. As previously stated, the evidence shows that at the beginning of the year 1925 Lamar county had advertised for bids for the selection of a county depository, but no bids were offered. The commissioners' court, acting under the provisions of article 2445, Revised Civil Statutes of 1911, then in force, designated three of the banks in the city of Paris as depositories, among them the First State Bank, which was named as the depository which should act as the clearing house.

The article above referred to, which is article 2550 of the present Civil Code, provides, among other things, that

"It shall be their [commissioners' court] duty, to deposit the funds of the county with any one or more banking corporation, association or individual banker, in the county or in adjoining counties in such amounts and for such periods as may be deemed advisable by the court, and at such rate of interest, not less than one and one-half per cent. per annum, as may be agreed upon by the court and the banker or banking concern receiving the deposit, interest to be computed upon daily balances due the county treasurer. Any banker or banking concern receiving deposits

under this Article shall execute a bond in the manner and form provided for depositories of all funds of the county, with all the conditions provided for same, the penalty of said bonds to be not less than the total amount of county funds to be deposited with such banker or banking concern."

It thus appears that the security to be given when the selection is made under the provisions of article 2550 is the same as that required when the selection is made upon bids offered. The character of security which the county must take in such cases is specified in article 2547 of the Revised Civil Statutes of 1925, which is as follows:

"Within five days after the selection of such depository, it shall be the duty of the banking corporation, association or individual banker so selected to execute a bond or bonds, payable to the county judge and his successors in office, to be approved by the commissioners court and Comptroller and filed in the office of the clerk of said county, with not less than five solvent sureties, who shall own unencumbered real estate in this State not exempt from execution under the laws of this State of as great value as the amount of said bond, or of as great value as the amount of all of said bonds when more than one bond; and said bond or bonds shall in no event be for less than the total amount of revenue of such county for the next preceding year for which the same are made. Nothing herein shall prevent the making of such bond or bonds by a surety company or companies, as provided by law, and payable as herein provided. The commissioners court may accept in lieu of such real estate or surety company, security, bonds of the United States, or of this State or of any county, city, town or independent school district in the State, which shall be deposited as the commissioners court may direct, the penalty of said bond or bonds not to be less than the total amount of the annual revenue of the county for the years for which said bond or bonds are given, and shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon such depository, and for the payment upon presentation of all checks drawn upon said depository by the county treasurer of the county and that said county funds shall be faithfully kept by said depository and accounted for according to law."

While there is no statutory provision authorizing banks to give, or counties to take, a different security from that specified in the article quoted, there is no express prohibition against the taking of a different character of security. In providing for the security counties should take in such transactions the Legislature evidently had in mind the purpose of protecting the county funds from loss by the insolvency of the depository— the very conditions which are disclosed in this controversy. Keeping that purpose in view, it can hardly be inferred that the Legislature intended to make unlawful the taking of any other character of security which a designated depository might lawfully give. The grant of power to counties in such cases should be liberally construed, for the purpose of accomplishing the end which the Legislature evidently had in mind. To hold that a county could not under any circumstances avail itself of any other form of security than that provided by the statute would defeat the primary purpose of those prospective provisions of the law. We may concede that the commissioners' court of Lamar county exceeded its statutory authority in taking the bank's bills receivable instead of the security provided for in article 2547. But it does not necessarily follow that the county cannot in this proceeding set up a valid lien against bills receivable which had been pledged by the bank. The county was not forbidden to take such security. If it exceeded its statutory authority the act was only ultra vires, not unlawful.

In the case of Commercial Guaranty State Bank et al. v. City of Longview et al., 11 S.W.(2d) 217, recently decided by this court, a similar question was involved. In that case the city of Longview had selected a state bank as the city depository and had taken United States bonds and treasury notes as security. The contention was made that the city had no authority to take security different from that prescribed by the statute, and for that reason the contract was illegal. In disposing of that question it was there said:

"The only factor that could affect the enforcibility of the contract was the lack of authority in the city to accept that character of security. But that lack of authority could not have been invoked by the bank if sued upon the contract, nor can it be invoked in this proceeding by the banking commissioner. The city officials who conducted the transaction with the bank acted in good faith. The city performed its part of the contract by depositing its funds as they accumulated, until the bank was closed. Where an ultra vires contract, untainted by any illegality, has been performed by the [municipal] corporation which has exceeded its authority, the other party can not plead that excess of authority as a justification for a refusal to perform his part of the agreement"—citing Bond v. Mfg. Co., 82 Tex. 309, 18 S. W. 691; Scheussler v. Town of Mason (Tex. Civ. App.) 28 S. W. 42; City of Corpus Christi v. Central Wharf & Warehouse Co., 8 Tex. Civ. App. 94, 27 S. W. 803; Galveston & W. R. Co. v. City of Galveston (Tex. Civ. App.) 37 S. W. 21; Perkins et al. v. State, 130 Miss. 512, 94 So. 460; City of St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825, 22 Am. St. Rep. 764; Bigelow on Estoppel, 61, 501. In this

case, as in that, it may be said that the county officials acted in the utmost good faith and for the protection of the county funds. At the time the bills receivable were pledged the First State Bank had on hand belonging to Lamar county the sum' of $184,068.26, which was largely in excess of the bond given for the protection of those funds. It conclusively appears from the evidence that the bills receivable were pledged by the bank in order to induce the county to consent that the bank might retain the deposits. It is reasonable to conclude from the evidence that if the additional security had not been given the funds of the county would have been withdrawn. It was to avert that withdrawal that the bank officials agreed to pledge the notes as security. It clearly appears from the evidence that the bank sought and obtained by that transaction a substantial benefit. To now permit the banking commissioner to repudiate the pledge would cause a serious loss to the county. Where the contract is not an unlawful one, equity will not sanction the commission of such a wrong.

That leads us to the consideration of the principal ground upon which appellant relies for a reversal of the judgment—that the bank had no power to pledge its assets as security for deposits; that such an agreement was discriminatory, contrary to public policy and void. There is nothing in the record before us to show that the bank was insolvent at the time this pledge of its bills receivable was made. We must therefore assume that the bank was solvent and financially able to meet its obligations. The identical question here presented was involved in the case of Commercial Guaranty State Bank et al. v. City of Longview et al., above referred to. The same authorities relied on by the appellant in this case were presented in that case. Those cases are: Commercial Banking & Trust Co. v. Citizens' Trust Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Carter v. Brock, 162 La. 12, 110 So. 71; County of Divide v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296; Bailey v. State, 72 Okl. 203, 179 P. 615. To those may be added the more recent case, decided by the Supreme Court of Arkansas, of Ark.-La. Imp. Dist. v. Taylor, 6 S.W.(2d) 533. Some of those cases held that securing a depositor by a pledge of the assets of a bank is discriminatory upon general common-law principles. Others base their ruling upon the peculiar provisions of their respective state statutes. We find, however, that the following courts of the states of Illinois, Iowa, Colorado, Pennsylvania, Arizona, North Carolina, and Kansas have adopted a contrary doctrine upon that subject: Ward v. Johnson, 95 Ill. 215; Richards v. Osceola Bank, 79 Iowa, 707, 45 N. W. 294; McFerson v. National Surety Co., 72 Colo.

482, 212 P. 489; Ahl v. Rhoads, 84 Pa. 319; Williams v. Hall, 30 Ariz. 581, 249 P. 755; Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795; Citizens' State Bank v. First National Bank, 98 Kan. 109, 157 P. 392, L. R. A. 1917A, 696. See, also, the case of Commercial Guaranty State Bank et al. v. City of Longview et al. for a discussion of the subject.

As will be seen from a reading of the cases relied on by the appellant, the doctrine which they announce is based upon the proposition that securing deposits by a pledge of its assets by a bank diminishes the resources·upon which other depositors have a right to rely and did rely upon making their deposits. That our state Legislature does not recognize that doctrine is to be inferred from the fact that it has expressly permitted state banks to secure county deposits by pledging United States bonds, state bonds, and bonds of municipalities held by such banks as a part of their assets. Bills receivable belonging to a state bank are entitled to no more sanctity as assets of such a bank than other assets consisting of bonds of the United States, of the state of Texas, or of municipalities. Clearly, if a state bank might legally pledge that character of assets, there is no rule of public policy which would prohibit it from pledging its bills receivable. We conclude that the judgment should be affirmed.