## TEXAS & P. RY. CO. v. POTTORFF.
### No. 6748.

Circuit Court of Appeals, Fifth Circuit.
Jan. 19, 1933.

Rehearing Denied March 8, 1933.

S. N. Russell and Del W. Harrington, both of El Paso, Tex., and T. D. Gresham and M. E. Clinton, both of Dallas, Tex., for appellant.

Thornton Hardie, of El Paso, Tex., for appellee.

Before BRYAN, FOSTER and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This case, and the case just decided, Pottorff, Receiver, v. El Paso-Hudspeth Counties Road District of Texas (C. C. A.) 62 F. (2d) 498, involving the validity and the enforceability against the receiver of a contract of the bank pledging some of its assets to se-

cure a depositor, in the one case of private, in the other of public, funds, are companion cases. They were tried in the same court at the same time.

Appellee urged in the court below, and urges here, in each of the cases, that the agreement under which the securities were pledged is invalid and unenforceable as beyond the power of the bank and in contravention of public policy. The District Judge, disagreeing with the receiver in the Road District Case, agreed with him in this one. Following B. & O. R. Co. v. Smith (C. C. A.) 56 F. (2d) 799, he thought that the authority which he had held under applicable statutes the bank had to secure deposits of public did not exist in the absence of statute to secure deposits of private funds, that the agreement was beyond the power of the bank to make and void, and that plaintiff could not enforce it.

The facts in this case, as in the other, are undisputed. At the time the bank failed, appellant had on deposit $54,646.94. The receiver has approved its claim for that sum, and has tendered a dividend on account of it of $16,394.08. He has refused to surrender the Liberty bonds put up to secure the deposit. These are the circumstances of their pledging:

In July, 1922, the railway being then in receivership, the First National Bank of El Paso was designated as an additional depository upon condition that it should furnish bonds with good, solvent sureties. Thereafter the deposits first of the receiver, later of the company, were fully protected, and their repayment guaranteed by corporate surety bonds. On January 29, 1931, the bank being still a solvent, going concern, the railway was induced by the bank to permit it to substitute for the surety bonds theretofore securing the deposit the Liberty Loan bonds in question. They were deposited with the trust officer of the bank to be held as security for the repayment, upon demand, of the deposits. By the agreement the bank saved bond premiums and secured the continuance of the deposit account, carrying an average balance of $50,000, which, but for its being secured either by bonds or pledge, would have been withdrawn.

The record shows that, though the bank had over a long period of years, with the acquiescence of the Banking Department, furnished corporate surety bonds to protect the deposits of numerous private depositors, this was the first instance of its pledging assets to secure private funds. Further, the record is not only devoid of affirmative proof that the thing the bank did here accords with national banking practices and customs, or is at all a necessary or desirable practice, but no single other instance of the practice having been indulged in has been presented, and it shows that, with the same uniformity which has attended the recognition of the power of national banks to secure public deposits by pledge, the Comptroller has ruled that they may not do so in the case of private deposits.

The general questions of the power of banks, state and national, in the absence of statutory authority, to pledge their assets to secure deposits, and of the enforceability of such pledges when made, are interesting ones, and have been the subject of many decisions. Raised usually in cases involving pledges to secure public deposits, and usually with reference to state banks, the questions have been differently decided in different jurisdictions, under the influence of different statutes and different views of the public policy involved. None of the cases, except arguendo, as in B. & O. R. Co. v. Smith supra, also Smith v. B. & O. R. Co. (D. C.) 48 F.(2d) 861; Schumacher v. Eastern, etc., Co. (C. C. A.) 52 F.(2d) 925; Sneeden v. City of Marion (D. C.) 58 F.(2d) 341, have drawn any distinction between private and public deposits as such, as to the power to secure them; but the question of power or not, where it had not been expressly conferred, has been decided broadly under the influence of the view taken by the particular court in the light of the existence or nonexistence of statutes as to whether it accorded with public policy to imply the power. In jurisdictions where the courts have held that to permit one depositor to thus gain a preference over another is contrary to sound public policy, they have stricken down pledges without regard to whether the funds secured were public or private, while in one or two jurisdictions, where no contravention of public policy in thus pledging assets is seen, the courts have, without distinction between them, sustained pledges of private and public deposits.[1]

In most of the cases this controversy has arisen where, though there was statutory authority for pledging assets of a designated kind to secure public deposits, the statute did not expressly authorize the particular pledging. In those cases the question argued has been whether statutes authorizing pledging must, as contrary to a broad public policy, be construed strictly as enabling only in the

[1] Ahl v. Rhoads, 84 Pa. 319; Ward v. Johnson, 95 Ill. 215, cited in the text of Morse on Banks & Banking (6 Ed.) vol. 1, § 63, p. 182, as holding that banks may secure persons who loan it money by deposits.

very terms, or liberally, as effective analogically; whether they must be regarded as declaring a narrow or a broad public policy in regard to the pledging of assets to secure public deposits. An examination of these cases will show at once how great an influence on the decisions has been exerted by the varying views of public policy entertained by the courts, and how uncertain, wavering, and unreliable a guide, unless fixed by statute, this same public policy is. Twin City Pipe Line Co. v. Harding Glass Co., 283 U. S. 353, 51 S. Ct. 476, 75 L. Ed. 1112; Ireland v. Craggs (C. C. A.) 56 F.(2d) 785. It will disclose that what is heresy in one jurisdiction is doctrine in another, and even sometimes that what is heresy in one court in the same jurisdiction is doctrine in another court there.[2] It will show that most of the reasoning of the courts is that kind of rationalization where logic serves desire by bringing forth conclusions which the premises were assumed to secure. It will completely explain the apparent contradictions in the holdings. Cases taking the view that public policy requires statutes authorizing the giving of security for deposits to be strictly construed, and that the statutes in their precise terms are the measures of the banks' powers, are Commercial Banking & Tr. Co. v. Citizens' Bank & Guaranty Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Foster v. City of Longview (Tex. Com. App.) 26 S.W.(2d) 1059; Austin v. Lamar County (Tex. Com. App.) 26 S.W.(2d) 1062; Farmers' & Merchants' State Bank v. Con. School Dist., 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407; Bliss v. Pathfinder Irr. Dist., 122 Neb. 203, 240 N. W. 291; (but, see, Bliss v. Marion, 121 Neb. 484, 237 N. W. 581), Schornick v. Butler (Ind. Sup.) 172 N. E. 181. Cases, and these are supported, we think, by the better reasons, holding that, where the Legislature of a state has declared in specific statutes that deposits of public money must be secured this sufficiently indicates the public policy of the state toward the securing of public deposits, to sustain contracts whether in exact accordance with the statute or not, made in good faith for their security, are, First Am. Bank & Trust Co. v. Palm Beach, 96 Fla. 247, 117 So. 900, 67 A. L. R. 1398, 1400; Mclaven v. Hunker, 35 N. M. 408, 299 P. 1075; Cameron v. Christy, 286 Pa. 405, 133 A. 551; McFerson v. Nat.

Surety Co., 72 Colo. 482, 212 P. 489; c/f Michie Banks & Banking, Vol. 4, p. 22, § 19.

A few of the cases have put their decision against the power firmly on the ground that, no express power to pledge assets to secure deposits having been granted to a bank, no basis in the absence of a statute authorizing or requiring the giving of security exists for the implication of the power. Those cases which have sustained the power of a bank to pledge, by implying it, find support for that holding in the view that a deposit is a loan, and claim to find in the established law that a bank has implied power to borrow money and pledge its assets authority to take deposits for such a pledge. Those denying the implication of the power do so on the ground that, though a deposit does make the bank a debtor to the depositor, it is not a loan. They insist that the power must be sought elsewhere than in the implied power to make loans.

Few cases have arisen in the state courts, and only one in the national courts, B. & O. R. Co. v. Smith, supra, has been called to our attention where the pledge has been made to a private depositor. These cases, except the two referred to in the preceding note 1, have held against the power. None of them has pitched the holding on the private character of the deposit. In some the existence of a statute containing a general prohibition against the giving of security has compelled the decision. Porter v. Canyon County Farmers' Mut. Fire Ins. Co., 45 Idaho, 522, 263 P. 632. In some, as in Carter v. Brock, 162 La. 12, 110 So. 71, though the court has declared against the power, this has been dicta, for the actual holding was that the transaction was valid as not a deposit but a loan. McCown v. Edwards, 185 Ark. 620, 48 S.W. (2d) 558, 559, is a clear case distinguishing a deposit from a loan, and upon that distinction holding invalid the pledge of assets to secure a private deposit. In that case a guardian authorized to loan the money of his ward put it on general deposit upon the security of a pledge. In a suit to charge him upon failure of the bank he was held liable; the court saying: "There is a vital distinction between a loan to a bank and a deposit with a bank. In one case security may be, and usually is, exacted. In the other security may not be given by the bank. The power of a bank to borrow money and to give security for it is unquestioned; while the power of a bank to give security for an ordinary deposit has been expressly denied."

[2] Commercial Guaranty State Bank v. Longview (Tex. Civ. App.) 11 S.W.(2d) 217; Id. (Tex. Com. App.) 26 S.W.(2d) 1059; Austin v. Lamar County (Tex. Civ. App.) 11 S.W.(2d) 553; Id. (Tex. Com. App.) 26 S.W.(2d) 1062.

■ We agree with this view that a deposit does indeed create a debt, but it creates something more. That a deposit is one thing, a loan another. "The striking fact remains * * * that a real difference between a deposit and a loan has always been assumed, as a matter of custom, in the banking business itself, and in all legislation dealing with the subject." Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 239, 51 A. L. R. 296.

■ We therefore reject the view that implied authority to pledge assets as security for loans extends to pledging them to secure deposits. We agree also with the view expressed that, generally speaking, a bank's general powers do not authorize it to pledge assets for deposits. Michie, supra. We find specifically that this bank had no such power, and this, not because the recognition of the power would conflict with our views of public policy, but because no express power to do so has been conferred upon it by statute, and because not only does the record not support the finding necessary to be made, if the power is implied, that the giving of pledges for private deposits is a reasonable incident to the business of receiving deposits, and necessary to the proper conduct of the business of a national bank, but the judicial knowledge of banking practices and customs which we may take establishes the contrary to be true.

■ It remains only to inquire whether, though the contract is ultra vires, the railway can enforce its claim on the pledged bonds on the ground that, though the agreement was beyond its powers, the bank has, by making it, obtained the deposit, and therefore may not keep the bonds without returning the deposit made on the faith of their pledging.

Appellant argues that, having complied with its part of the agreement by leaving its funds on general deposit with the bank, the bank ought to be made to do what it promised, that is, devote the securities to making appellant whole. It argues (1) that, though the bank's agreement be ultra vires, estoppel prevents it saying so; (2) that the contract for depositing was a single one, the agreement for deposit being precedently conditioned on the agreement for security, and, that agreement failing, the bank holds the funds, not as debtor for a general depositor, but as trustee for a special one.

We cannot agree with either of these contentions. It is perfectly clear that, though the railway company was induced by the promise of security to deposit its funds, there are two agreements here, not one. One, that

the bank should pay back to the railway upon demand the sums deposited with it as other general deposits were. This entirely valid contract the receiver has recognized, and has offered to pay the railway a dividend on account of it. The other is an agreement for security. This we have found to be invalid and without contractual force as beyond the corporate powers. This agreement plaintiff asks the aid of this court to enforce.

■ It is settled law in the courts of the United States that what a corporation cannot bind itself to do, the courts will not compel. California Nat. Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; Union Pac. Ry. v. Chicago, etc., R. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265; Central Transportation Co. v. Pullman's Palace-Car Co., 139 U. S. 60, 11 S. Ct. 478, 35 L. Ed. 55. Especially will it not do it in a case of this kind, where the controversy is not between the bank and the railway, but between the railway and the bank's creditors, the bank having failed, and "the interest of others than the parties," Beasley v. T. & P. R. Co., 191 U. S. 492, 24 S. Ct. 164, 166, 48 L. Ed. 274, being involved.

This is not a case like Aldrich v. Chemical Nat. Bank, 176 U. S. 636, 20 S. Ct. 498, 44 L. Ed. 611; Citizens' Central Nat. Bank v. Appleton, 216 U. S. 206, 30 S. Ct. 364, 54 L. Ed. 443; Schneider v. Thompson (C. C. A.) 58 F.(2d) 98, of a solvent bank which has obtained the benefit of a transaction, seeking to avoid, on the ground of ultra vires, returning what it has received. In those cases the suit was not on the contract, but on the benefits received. This is not such a case. It is upon a contract, to enforce it.

■ Appellant's claim that, if it cannot have its contract, money of the bank, to the extent of its deposits, should be now earmarked and held in trust for it, is equally without merit. In the first place, while it is certainly true that parties may by agreement give to deposits which would otherwise be general the special character of trust funds, an agreement definitely fixing the character of the deposit as general may not be disregarded, because, if the depositor had fully known the law and the facts, he would have acted differently for his protection. Fagan v. Whidden (C. C. A.) 57 F.(2d) 631.

■ Appellant's contract with the bank for the repayment of its deposits on demand was valid. These deposits it can have back, if the bank can pay. The contract for security was indeed invalid, but there is no basis at all here for declaring a trust. Here is a contract for depositing, which was valid, and one for se-

curity, which was invalid because of want of power in the bank, of which want of power appellant was as fully charged with knowledge as the bank was. The result is simply that, though the railway has the right to press its claim for its debt, it cannot do so for the security.

It cannot be that a general depositor in a bank, who has made an agreement for security, may, because the security fails through an invalidity which in law it knew, find the bank converted into a trustee and himself a cestui que trust of the money of the bank to the extent of the amount of his general deposit.

The judgment is affirmed.